UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI, SOUTHERN DIVISION

| | | |
|---|---|---|
| OSPREY SHIP MANAGEMENT, INC. and CORMORANT SHIPHOLDING CORP., | § § § | |
| Plaintiffs, | § | |
| vs. | § | |
| JACKSON COUNTY PORT AUTHORITY; PASCAGOULA BAR PILOTS ASSOCIATION; MICHAEL C. TORJUSEN; RONALD T. ROBERTSON; ROBERT T. BAKER; FREDERICK A. LUNDY, SR; WALTER W. GAUTIER; DON FOSTER; JOE MOSSO; RANDY JOPLIN, HARBORMASTER; NORTHROP GRUMMAN SHIP SYSTEMS, INC.; COLLE TOWING COMPANY, INC.; UNITED STATES OF AMERICA | § § § § § § § § | Case No. 1:05 CV 390 LG RHW<br><br>In Admiralty |
| Defendants. | § | |

PILOT DEFENDANTS' RESPONSE
AND OBJECTION TO PLAINTIFFS
SUGGESTED UNDISPUTED FACTS

1. Disputed. There are no "senior pilots" only licensed pilots and persons who do not hold state bar pilots licensed, as set out in the affidavits of the pilot defendants. As set out in undisputed facts, the ship was being maneuvered toward the dock while Pilot Foster was acting as pilot. The starboard side of the ship did make contact with the Northwest corner of the end of the Northrop Grumman ship ways which it was learned after the incident were approximately 77 feet from the East toe of the channel. As noted in the documents provided

by various sources, the surveys indicate that the shoulder of the channel extends to the East of the end of the ways.

2. Disputed. As admitted in the deposition of Captain Potter, the ship did not run aground. There ship continued movement with no indication of grounding. The side of the ship did make contact with the end of the ways. As testified by Captain Potter deposition and the affidavits of Don Foster, the location of the end of the ways was not known. The ways were not abandoned but owned maintained and buoyed by Northrop Grumman.

3. Disputed, the pilots local knowledge is set out in their affidavits and their deposition testimony as well as the testimony of the tug captains and crew involved.

4. Disputed as stated in the affidavits and deposition testimony of the pilots. The port authority pursuant to the tariff and the US Coast Guard issue licenses to Bar Pilots for the Port of Pascagoula.

5. Disputed. Don Foster, like the other pilots and mariners with local knowledge knew that the Buoy marked the outer end of the ways and that the buoy was maintained by NGSS. Their local knowledge gained from years of shared experience was that the area West of Buoy No. 2 was safe for large vessel traffic. He knew the location of the end of the ways was East of Buoy No. 2.

6. Disputed. The end of the ways was not a known obstruction. I was not identified by charts or surveys. Neither the Corps of Engineers nor Noaa surveys provided to the pilots indicated the location of the end of the ways. Admitted that local knowledge included the understanding that as long as a ship was west of Buoy No. 2 it would be safe from the submerged ways.

7. Admitted that the pilots relied on NGSS to properly locate and maintain Buoy No. 2. Prior to the incident the pilots did not have knowledge of the permits.

8. Admitted that the pilots relied to their detriment on NGSS to properly mark the ways and locate Buoy No. 2. The did not specifically know the permitted location of the launchway. That information was developed only after the extensive surveys performed after August 15, 2004.

9. Disputed. The pilots did not advise the Master that Buoy No. 2 marked the federal channel. The captain testified contrary to this suggested statement and the deposition and affidavit testimony of the pilots and other officers aboard the American Cormorant.

10. Disputed. The Tariff provisions and their interpretation is a legal issue. The pilots considered the port tariff as their tariff as stated in the Pilot depositions and affidavits. Vessels which enter the port are required to comply with the terms of the tariff. In addition the American Cormorant was represented by a ship agent licensed by the port who had a copy of the port tariff and was bound by it as were the defendant pilots.

11. Disputed. The vessel did not run aground as acknowledged by the captain of the American Cormorant. The side of the ship scraped against the end of the ways. There were not sufficient lookouts aboard the American Cormorant, while the ship positioned its first officer on the bow of the ship together with other crewmen (giving the pilot the impression that there was sufficient lookout) unknown to the pilot at the time, the ships captain had not instructed them to act as lookouts. Neither of the pilots aboard nor anyone in the bridge was in a proper location to act as a lookout with a ship that was 738 feet long and with the bridge located approximately 600 feet aft of the bow. If the ships path was too close to the

obstruction buoy in issue, the ship's lookout should have informed the pilot in time for him to take responsive action. The facts are undisputed that the purpose of the buoy as an obstruction buoy was apparent to the captain and master of the American Cormorant. It is undisputed that at no time prior to the damaged area of the ship passing the buoy is it asserted that the ships captain was informed that the buoy was anything other than an obstruction buoy.

Respectfully submitted,

BRYAN, NELSON, SCHROEDER,
CASTIGLIOLA & BANAHAN, PLLC
Attorneys for Defendant, Don Foster

BY: *S/ Vincent J. Castigliola, Jr.*

VINCENT J. CASTIGLIOLA, JR. (MS Bar #5923)

CERTIFICATE OF SERVICE

I, VINCENT J. CASTIGLIOLA, JR., of counsel for Defendant, Don Foster, and the Pilot Defendants do hereby certify that I have this date electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification to all counsel of record.

This the 20th day of July, 2007.

*S/ Vincent J. Castigliola, Jr.*

VINCENT J. CASTIGLIOLA, JR.

-4-

BRYAN, NELSON, SCHROEDER,
CASTIGLIOLA & BANAHAN, PLLC
Post Office Drawer 1529
Pascagoula, MS 39568-1529
Tel.: (228) 762-6631
Fax: (228) 769-6392
vincent@bnscb.com

-5-