**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **OSPREY SHIP MANAGEMENT, INC.** § | | |
| **and CORMORANT SHIPHOLDING** § | | |
| **CORP.** § | | **PLAINTIFFS** |
| § | | |
| **v.** § | **Civil No. 1:05CV390-HSO-RHW** | |
| § | | |
| **JACKSON COUNTY PORT** § | | |
| **AUTHORITY,** *et al.* § | | **DEFENDANTS** |

<u>**ORDER AND REASONS GRANTING
MOTION FOR SUMMARY JUDGMENT OF DEFENDANT
COLLE TOWING COMPANY, INC.**</u>

BEFORE THE COURT is the Motion for Summary Judgment of Defendant

Colle Towing Company, Inc. ["Colle Towing" or "Defendant"], filed February 15,

2007 [148-1], in the above-captioned cause.  Attached as an exhibit to the Motion

was a Statement of Uncontested Material Facts.  In opposition, Plaintiffs filed a

Response Memorandum [153-1] and a Response to Colle Towing's Proposed

Statement of Uncontested Facts [154-1], and Colle Towing filed a Rebuttal [159-1]

in support of its Motion.  After consideration of the submissions and the relevant

legal authorities, the Court finds that Colle Towing's Motion for Summary

Judgment [148-1] is well taken and should be granted.

## I. <u>FACTS AND PROCEDURAL HISTORY</u>

The M/V AMERICAN CORMORANT is an oceangoing heavy lift vessel

owned and/or operated by Plaintiffs that was scheduled to enter the Port of

Pascagoula and dock at a wharf referred to as the Old Grain Docks or Old Grain

Elevator, which is located on the west bank of the Pascagoula River.  *See* Compl., at ¶¶ 1-2, 32; Def.'s Statement of Uncontested Material Facts, p. 1.  In preparation for the arrival of the M/V AMERICAN CORMORANT, representatives of the Port and other Defendants in this case, as well as representatives of Plaintiffs, attended a "load out" meeting in early August 2004, to discuss the particulars of the vessel's arrival.  *See* Compl., at ¶ 24; Def.'s Statement of Uncontested Material Facts, ¶ 2. At the meeting, the parties decided that, due to the M/V AMERICAN CORMORANT's size, length, width, and tonnage, all Port traffic would be stopped during the vessel's arrival and departure from the Port.  *See* Compl., at ¶ 25.  It was also determined that two pilots (with two "apprentices") and two tugs would be sufficient to handle the vessel's movements.  *See id.* at ¶¶ 25-26; Def.'s Statement of Uncontested Material Facts, ¶ 3.  The parties were also made aware at the meeting that the M/V AMERICAN CORMORANT would be without the benefit of bow thrusters.  *See* Compl., at ¶ 26.

At approximately 0905 hours on August 15, 2004, Defendant Pilots Don Foster and Joe Mosso boarded the vessel as the assigned compulsory pilots, and according to Plaintiffs, assumed primary responsibility for navigating the vessel into the Port.  *See* Compl., at ¶¶ 29-30; Def.'s Statement of Uncontested Material Facts, ¶ 5.  Two tugboats owned and operated by Colle Towing, the NATALIE COLLE and the DANIEL COLLE, assisted with the M/V AMERICAN CORMORANT's entrance into the Port.  *See* Def.'s Statement of Uncontested

Material Facts, ¶ 6; *see also* Pls.' Resp. to Proposed Statement of Uncontested Facts, p. 1 (not listing Fact No. 6 as contested).  Shortly before the two Colle Towing assist tugboats met the M/V AMERICAN CORMORANT, Pilot Don Foster took over as pilot from Pilot Joe Mosso, assuming control of the vessel's navigation.  *See* Def.'s Statement of Uncontested Material Facts, ¶ 10; *see also* Pls.' Resp. to Proposed Statement of Uncontested Facts, p. 1 (not listing Fact No. 10 as contested).

At approximately 10:44 a.m., when the M/V AMERICAN CORMORANT was east of Singing River Island and  in the vicinity of lighted beacons 47 and 48, the Tug NATALIE COLLE came alongside the vessel and made up forward on the ship's starboard bow.  *See* Def.'s Statement of Uncontested Material Facts, ¶¶ 7-8; *see also* Pls.' Resp. to Proposed Statement of Uncontested Facts, p. 1 (not listing Fact Nos. 7-8 as contested).  Approximately one minute later, the Tug DANIEL COLLE made up aft on the ship's starboard quarter.  *See* Def.'s Statement of Uncontested Material Facts, ¶ 9; *see also* Pls.' Resp. to Proposed Statement of Uncontested Facts, p. 1 (not listing Fact No. 9 as contested).  Once the Colle Towing tugs were alongside the vessel, Pilot Foster gave directions and orders as pilot.  *See* Def.'s Statement of Uncontested Material Facts, ¶ 11; *see also* Pls.' Resp. to Proposed Statement of Uncontested Facts, p. 1 (not listing Fact No. 11 as contested).

At around 1100 hours, while maneuvering off the east bank of the Pascagoula River in the vicinity of Northrop Grumman Shipyard, the M/V AMERICAN

CORMORANT was grounded and/or allided with and was damaged by a submerged object, later determined to be a submarine launchway Number 1 owned by Defendant Northrop Grumman Ship Systems, Inc. ["NGSS"].  The launchway extends in a southwesterly direction from the shore of the east bank of the Pascagoula River.  *See* Compl., at ¶¶ 31, 33A; *See* Def.'s Statement of Uncontested Material Facts, ¶ 13; *see also* Pls.' Resp. to Proposed Statement of Uncontested Facts, p. 1 (not listing Fact No. 13 as contested).  NGSS was also the owner of a private navigational aid known as "Red Buoy No. 2" that marked the submerged launchway.  *See* Compl., at ¶ 15; Def.'s Mem. in Supp. of Mot. for Summ. J., at p. 4.  As a result of the allision, the vessel suffered hull damage.  *See* Def.'s Statement of Uncontested Material Facts, ¶ 13; *see also* Pls.' Resp. to Proposed Statement of Uncontested Facts, p. 1 (not listing Fact No. 13 as contested).

On August 9, 2005, Plaintiffs filed their initial Complaint for damages suffered by the M/V AMERICAN CORMORANT, and with their Fourth Amended Complaint ["Complaint"] filed on October 6, 2006, Plaintiffs seek damages of $1,700,000.00, plus attorneys' fees, pre-judgment interest, survey, adjustment and underwriting expenses, and court costs.  *See* Compl., at ¶¶ 58-59.

## II. DISCUSSION

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim, counterclaim, or cross-claim as to which there

is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. *See* FED. R. CIV. P. 56.

A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *See id.* at 324-25.  The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986).

B.  Defendant Colle Towing's Motion for Summary Judgment

In their Complaint, Plaintiffs aver that at the time of the incident in question, the M/V AMERICAN CORMORANT was "under the control of compulsory Pilots, Defendants Foster and Mosso, Tug NATALIE COLLE and Tug DANIEL COLLE provided by Defendant Colle Towing."  Compl., at ¶ 32.  Plaintiffs assert various causes of action against Colle Towing, including negligence, breach of warranty of workmanlike performance, breach of contract, and/or breach of duty to perform its obligations in providing tugs for docking assistance.  *See* Compl., at ¶¶ 33G, 38, 41.

Specifically, Plaintiffs allege that Colle Towing was negligent in that it, through its two assist tugs,

failed to provide a sufficient lookout, failed to warn the vessel, the
Master, or the Pilots that the AMERICAN CORMORANT was in
dangerous proximity to the submerged hazard and/or outside the channel
at the time of the incident; failed to warn of the vessel's dangerous
proximity to Buoy No 2 prior to the incident; and failed to exercise due
care required by assisting tugs....

Compl., at ¶ 33G.

Plaintiffs allege that Colle Towing breached a contract, a warranty of

workmanlike performance, and/or a duty to perform its obligations in providing

tugs for docking assistance, by failing to advise or notify the compulsory pilots or

Master if the vessel was outside of the channel or outside of sufficient water depth,

was operating in dangerous proximity to known hazards marked by Buoy No. 2, or

was in the vicinity of other known hazards to navigation. *See* Compl., at ¶ 38, 41.

Thus, Plaintiffs assert hybrid tort and contract claims against Colle Towing.

### 1.    Plaintiffs' Breach of Contract and Breach of Warranty of Workmanlike Performance Claims

The United States Supreme Court has held that tort law, rather than

contract law, governs the liability of towers and towing vessels for loss or damage to

tows. *See Stevens v. The White City*, 285 U.S. 195 (1932) (noting that "suit by the

owner of a tow against her tug to recover for an injury to the tow caused by

negligence on the part of the tug is a suit ex delicto and not ex contractu").

Insufficient evidence has been presented of the existence of any contract between

Plaintiffs and Colle Towing.  Moreover, there can be no serious allegation raised,

based on the facts of this case and the record, that Plaintiffs' claims against Colle

Towing are anything other than *ex delicto*, and not *ex contractu*.  Plaintiffs' breach

of contract claim must necessarily be dismissed as a matter of law.

Plaintiffs' breach of warranty of workmanlike performance claim faces a similar problem. While Plaintiffs cite *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124 (1956), for the proposition that there is an implied warranty of workmanlike performance with respect to services supplied by a tug, this general rule, which has been severely limited by decisions rendered and statutory authority enacted since 1956, is not applicable to the present case. The Fifth Circuit has noted that the claim of breach of this implied warranty has its origin in contract, rather than in tort, and is akin to a manufacturer's warranty regarding the soundness of its product. *See Hercules, Inc. v. Stevens Shipping Co.*, 629 F.2d 418, 422 (5th Cir. 1980) (reheard *en banc* and reversed on other grounds, 698 F.2d 726 (5th Cir. 1983)) (internal citations omitted). As the *Hercules* court noted, this cause of action "has been described as 'the contractual obligation to perform duties under a contract with reasonable safety.'" *Id.* (*quoting Garner v. Cities Service Tankers Corp.*, 456 F.2d 476, 481 (5th Cir. 1972)). The Fifth Circuit concluded that a warranty of workmanlike performance claim is barred if an action on the contract is barred. *See id.* In the present case, insufficient evidence has been presented of the existence of any contract between Plaintiffs and this Defendant, therefore precluding any breach of warranty of workmanlike performance theory of liability. Because Plaintiffs' contract claim cannot survive on its face under these facts, their breach of warranty of workmanlike performance claim must also be dismissed. *See id.*

-7-

### 2.    Plaintiffs' Negligence and Breach of Duty Claims

The only potentially viable claims against Colle Towing sound in tort. Plaintiffs' negligence claim, and what they characterize as a breach of duty by Defendant to perform its obligations in providing tugs for docking assistance, both fall within the purview of a tort negligence claim.

The standard of care as between a tug and its tow is "such reasonable care and maritime skill as prudent navigators employ for the performance of similar service." *Stevens*, 285 U.S. at 202.  The burden rests with Plaintiffs to demonstrate that the damage to the vessel was caused by a breach of that duty.  *See id.*  When a tug is merely providing the motive power to the towed ship, with the towed ship's personnel exclusively directing and controlling the movements of both vessels, then fault cannot be imputed to an otherwise non-negligent tug.  *See Sturgis v. Boyer*, 65 U.S. 110, 122 (1860); *Moran Towing and Transportation Co., Inc. v. Empresa Hondurena de Vapores*, 194 F.2d 629, 632 (5th Cir. 1952); *Old Time Molasses Co. v. New Orleans Coal & Bisso Towboat Co.*, 31 F.2d 963, 966 (5th Cir. 1929).

In its Motion for Summary Judgment, Colle Towing argues that it is not liable for the damages to the M/V AMERICAN CORMORANT as the owner and operator of the assist tugboats NATALIE COLLE and DANIEL COLLE because its assist tugs were only carrying out the orders of the compulsory pilot aboard the vessel when it allided with the submerged launchway, and because there was no negligence by the tugboats which caused or contributed to the incident.  *See* Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 1-2.

Plaintiffs counter that summary judgment is not appropriate for several reasons. They assert that one or both of the tugs were negligent in allegedly not following the orders of Pilot Foster by laying alongside the M/V AMERICAN CORMORANT just prior to the allision, rather than continuing to push perpendicular to the vessel, as instructed by Pilot Foster, thereby contributing to the mishap. *See* Pls.' Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J., pp. 8-11, 16. Plaintiffs maintain that the tugs gave too late a warning of the danger of the tug DANIEL COLLE's potential collision with Buoy No. 2, which supposedly marked the end of the launchway, failed to alert the vessel that it might be outside the channel, and neglected to alert the pilot concerning water depths until after the allision with the launchway. *See id.* at pp. 12-16, 18. Plaintiffs further allege that the forward tug, NATALIE COLLE, failed to provide distances off navigational aids. *See id.*

The argument that the tugs failed to follow Pilot Foster's orders cannot succeed because, other than conclusory assertions submitted in the briefs, the record is devoid of sufficient evidence creating a genuine dispute of the fact that the tugs were following Pilot Foster's orders at all material times. Mere allegations and arguments in briefs, without sufficient evidentiary support, will not preclude summary judgment. *See* FED. R. CIV. P. 56(e).

It is undisputed that, as the vessel was in the proximity of Red Buoy No. 2, and before the vessel allided with the submerged launchway, Pilot Foster instructed both tugs to come ahead strong or "get on a 90," which meant to push perpendicular

to the M/V AMERICAN CORMORANT, pushing the vessel in a westerly direction away from the buoy and, presumably, the launchway.  *See* Dep. of Donald Foster, Ex "3" to Pls.' Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J., at p. 136.  Then, as Plaintiffs note in their Reply Brief, "[w]hen the aft tug expressed concern that it might hit Buoy No. 2, and that it may be necessary to release the line of the vessel, the Pilot told him to 'do whatever you have to do to miss the buoy, or lay alongside the ship to miss the buoy, or some words to that effect.'"  Pls.' Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J., at p. 10 (*quoting* Dep. of Donald Foster, Ex. "3" to Pls.' Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J., at p. 134).  In response, the aft tug DANIEL COLLE laid alongside the ship in order to avoid hitting Red Buoy No. 2, in clear compliance with Pilot Foster's order to avoid the buoy, which he had issued after his order to "push on a 90."

In their Reply, Plaintiffs contend that there is a question of fact in the record as to whether the forward tug NATALIE COLLE, captained by Mark Sutera, continued to push on a 90, as instructed, or whether it also laid alongside the M/V AMERICAN CORMORANT due to the close proximity of Buoy No. 2, without an order to do so by Pilot Foster.  In support of this contention, Plaintiffs point to the testimony of Captain Sutera, who estimated that Buoy No. 2 was 10-15 yards[1] away from the *starboard side* of NATALIE COLLE, indicating that the tug was parallel to

---

[1]  In their Response Brief, Plaintiffs assert that Captain Sutera testified that the tug NATALIE COLLE passed 10-15 feet from the buoy, *see* Pls.' Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J., at p. 10, but his actual statement was that it passed 10-15 *yards* from the buoy.  *See* Dep. of Mark Sutera, Ex. "8" to Pls.' Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J., at pp. 24-25.

the vessel at that time.  According to Plaintiffs, this creates a fact issue as to whether the NATALIE COLLE complied with Pilot Foster's orders.  *See* Dep. of Mark Sutera, Ex. "8" to Pls.' Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J., at pp. 24-25; *see also* Pls.' Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J., at p. 11.

Review of the record evidence, however, compels the conclusion that there are no material fact questions regarding whether the forward tug NATALIE COLLE followed Pilot Foster's orders.  Plaintiffs' position is that both tugs were instructed to "get on 90" (or be perpendicular to the vessel) before either passed the buoy, so that if the NATALIE COLLE was parallel when it passed the buoy, it did not follow Pilot Foster's order.  The record is clear, however, that it was not until after the forward tug NATALIE COLLE had passed the buoy off its starboard side, but before the aft tug DANIEL COLLE had passed the buoy, that the tugs were told to come ahead "full on a 90."[2]  *See* Dep. of Mark Sutera, Ex. "B" to Def.'s Reply in Support of its Mot. for Summ. J., at p. 20.  Captain Sutera's testimony that Buoy No. 2 was 10-15 yards away from the *starboard side* of the NATALIE COLLE, meaning that the tug was parallel to the vessel, is not inconsistent with his testimony that he was ordered by Pilot Foster to turn perpendicular to the vessel after he passed the buoy.  Thus, no material questions of fact exist as to whether the tugs followed Pilot Foster's orders.

---

[2] Captain John Potter, Master of the M/V AMERICAN CORMORANT, testified that he could not remember whether the forward tug NATALIE COLLE passed the buoy off the tug's stern or off its starboard side.  *See* Dep. of Captain John Potter, Ex. "A" to Def.'s Reply in Support of its Mot. for Summ. J., at p. 296.  Nevertheless, he later testified that the tugs followed Pilot Foster's orders.  *See* Dep. of Captain John Potter, Ex. "3" to Def.'s Mot. for Summ. J., at p. 278.

Moreover, the undisputed deposition testimony in the record, from Pilot Foster as well as from the Master of the M/V AMERICAN CORMORANT, Captain Potter, was that the tugs followed Pilot Foster's orders.  In relevant part, Pilot Foster stated as follows:

> Q:    Are you satisfied that the NATALIE COLLE and the DANIEL COLLE complied with all of the orders, maneuvering orders, which you gave those two tugs from the bridge of the AMERICAN CORMORANT while she was proceeding up the channel to the berth?
>
> A:    I have no problem with the tugboats at all.
>
> Q:    You don't attribute any fault to the tugs at all, do you?
>
> A:    No.
>
> *   *   *
>
> Q:    And nothing the tugs failed to do, do you attribute to this incident?
>
> A:    No, sir.

Dep. of Donald Foster, Ex. "4" to Def.'s Mot. for Summ. J., at p. 142.

Similarly, in Captain Potter's deposition, he exonerated the tugs and testified that they followed Pilot Foster's instructions:

> Q:    Did the tugs successfully assist the AMERICAN CORMORANT to berth at the grain elevator?
>
> A:    Correct.
>
> Q:    Did you have any objection with any of the movements of the tugs in berthing the ship at the grain elevator?
>
> A:    From what I observed they followed the pilot's instructions.

Q:    From what you observed is it true that the tugs followed all of the pilot's instructions correctly from the time at 10:44 and 10:45 where they made fast to the ship until the ship was successfully berthed at the grain elevator?

A;    Of the instructions that I heard I would say they probably did, yes.

Dep. of Captain John Potter, Ex. "3" to Def.'s Mot. for Summ. J., at p. 278.

Because the tugs simply followed the orders of the pilot aboard the M/V AMERICAN CORMORANT, fault cannot be imputed to Colle Towing. *See Sturgis*, 65 U.S. at 122; *Moran Towing and Transportation Co., Inc.*, 194 F.2d at 632; *Old Time Molasses Co.*, 31 F.2d at 966. Therefore, Colle Towing is entitled to judgment as a matter of law.

Plaintiffs also contend that the tugs gave a late warning of the danger of the tug DANIEL COLLE's possible collision with the buoy and failed to alert the pilot concerning water depths until after the allision with the launchway, and that the forward tug NATALIE COLLE failed to give distances off navigational aids. Plaintiffs maintain that the tugs owed a duty to be on the lookout for hazards, and that they had a customary practice or routine of providing distances and water depths to pilots, whether specifically requested to or not, but neglected to do so in this case. *See* Pls.' Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J., p. 16.

Plaintiffs assert that custom and practice may be considered to establish a navigation standard, as long as it does not conflict with the rules of navigation. *See* Pls.' Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J., p. 18. They contend that it should be persuasive that "[i]n the maritime, Longshore context...a duty may be

-13-

created by custom." *Id.*  Plaintiffs insist that evidence presented regarding custom

and practice, purportedly acknowledged by both Pilot Foster and Captain Sutera,

distinguishes this case from the one cited by Defendant, in that these tugs were not

"simply along for the ride until given specific orders regarding what actions or

maneuvers to take...." *Id.* (*quoting Crowley American Transport v. Double Eagle,*

208 F.Supp.2d 1250, 1267 (S.D. Ala. 2002)).  However, Plaintiffs have cited no

authority that would shift the responsibility for navigation of the vessel from the

pilot and master of the vessel to tugboats that are simply following their orders.

  Plaintiffs suggest that the custom of the tugs alerting the pilot if a vessel is

at risk of collision, or other hazard, would also be consistent with Rule of the Road

7, as discussed in the *Crowley* case, which states that "[e]very vessel shall use all

available means" to determine and avoid risk of collision.  *See* Pls.' Resp. Mem. in

Opp'n to Def.'s Mot. for Summ. J., p. 19 (*quoting* Rule of the Road 7).  Citing Rule of

the Road 2, Plaintiffs assert that the tugs further remain bound by the exercise of

ordinary practices of good seamanship.  *See* Pls.' Resp. Mem. in Opp'n to Def.'s Mot.

for Summ. J., p. 19.  However, in *Crowley*, the discussion regarding the Rules of the

Road was in the context of collision of barges on a river, not an allision with a

submerged object which is invisible to those above the surface of the water.

Plaintiffs have not offered persuasive evidence or authority for the proposition that

the responsibility for navigation of a vessel should be shifted from the pilot and

master of the vessel to tugboats that are simply following their orders.  Moreover,

there is no evidence in the record to support the conclusion that the Pilot and the

Master here were unaware of the location of the buoy or needed the assistance of the tugs in spotting it.  In fact, the record is replete with testimony from both the Pilot and the Master regarding distances they observed between the M/V AMERICAN CORMORANT and the buoy, and between the tugs and the buoy.  A review of the record evidence places it beyond any serious dispute that both men were able to, and did see, the buoy quite clearly prior to the allision.

Plaintiffs submit that the presumption of negligence when a moving vessel strikes a fixed object is applicable to tugs assisting in a docking maneuver, as well as to the docking pilot.  *See* Pls.' Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J., at pp. 20-21 (*citing Patterson Terminals, Inc. v. SS Johannes Frans*, 209 F.Supp. 705, 708 (E.D. Pa. 1962); *cf. The Severance*, 152 F.2d 916, 1946 AMC 128 (4th Cir. 1946)).  According to Plaintiffs, this shifts the burden of proof to Colle Towing, rendering summary judgment inappropriate.  However, Plaintiffs cite *The Severance* for the proposition that "the presumption only attaches to the docking pilot," *see* Pls.' Resp. Brief in Opp'n to Def.'s Mot. for Summ. J., at p. 21; *see also The Severance*, 152 F.2d at 918, which would obviously not include Colle Towing in this case.  In *Patterson Terminals*, in contrast to the present case, the docking pilot was an employee of the tug company, which is why the Eastern District of Pennsylvania determined that the tug company could be held liable.  *See Patterson Terminals, Inc.*, 209 F.Supp. at 706.  That court noted that "[t]he presumption of negligence arising from a vessel's collision with a stationary object operates against all parties *participating in the management of the vessel* at all times when negligent

management was a factor causing the collision." *Id.* at 708 (emphasis added).  In the present case, there is insufficient evidence that either the tugs, NATALIE COLLE and DANIEL COLLE, or any employee of Colle Towing, were participating in the management of the M/V AMERICAN CORMORANT when the incident in question occurred.  They were simply following instructions from those in control of the vessel's navigation.  Based on the law as applied to these facts, the Court is of the opinion that Colle Towing is entitled to judgment as a matter of law.

### III. CONCLUSION

The Court finds that there are no genuine issues of material fact with respect to Plaintiffs' claims against Defendant Colle Towing.  Because it is clear, as discussed herein, that Defendant Colle Towing is entitled to judgment as a matter of law, summary judgment is appropriate in its favor.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited herein, the Motion for Summary Judgment of Defendant Colle Towing Company, Inc., filed February 15, 2007 [148-1], should be and is hereby **GRANTED,** and all claims asserted against Defendant Colle Towing Company, Inc., are hereby dismissed with prejudice, with each party to bear its own costs.

**SO ORDERED AND ADJUDGED**, this the 3rd day of December, 2007.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE