IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| OSPREY SHIP MANAGEMENT, INC. § | | |
| and CORMORANT SHIPHOLDING § | | |
| CORP. § | | PLAINTIFFS |
| § | | |
| v. § | | Civil No. 1:05CV390-HSO-RHW |
| § | | |
| JACKSON COUNTY PORT § | | |
| AUTHORITY, *et al.* § | | DEFENDANTS |

**ORDER AND REASONS GRANTING DEFENDANT
JOE MOSSO'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion for Summary Judgment of Defendant Joe Mosso ["Mosso" or "Defendant"], filed July 9, 2007 [240-1], in the above-captioned cause. Attached as an exhibit to the Motion was a Statement of Undisputed Facts. In opposition to Mosso's Motion for Summary Judgment, Plaintiffs filed a Response Memorandum [260-1] and a Response and Objections to Proposed Statement of Uncontested Facts [267-1].[1] Mosso filed a Rebuttal [273-1] ["Joint Rebuttal"] and a Response and Objection to Plaintiffs' Suggested Undisputed Facts [278-1] ["Objections"][2], as well as a separate Rebuttal [274-1] ["Rebuttal"], in support of his Motion. After consideration of the submissions and the relevant legal authorities, the Court finds that Mosso's Motion for Summary Judgment [240-1] is

---

[1] Plaintiffs' Response and Objections and Response Memorandum are also in opposition to the Motions for Summary Judgment of the Pascagoula Bar Pilots Association and other Defendant members of the Association, but these Motions are not addressed in this Order.

[2] Pascagoula Bar Pilots Association and other Defendant members of the Association also joined in filing the Rebuttal [273-1] and Response and Objection [278-1]; however, these Motions for Summary Judgment are not addressed in this Order.

well taken and should be granted.

## I. FACTS AND PROCEDURAL HISTORY

The M/V AMERICAN CORMORANT is an oceangoing heavy lift vessel owned and/or operated by Plaintiffs that was scheduled to enter the Port of Pascagoula and dock at a wharf referred to as the Old Grain Docks, Port of Pascagoula.  *See* Compl., at ¶¶ 1-2, 32.  In preparation for the call of the M/V AMERICAN CORMORANT at the Port of Pascagoula [the "Port"], representatives of Plaintiffs attended a "load out" meeting in early August 2004 with representatives of various Defendants to this action, including Defendants Don Foster and Joe Mosso, the harbor pilots who eventually piloted the M/V AMERICAN CORMORANT on the date of the incident at issue in this case.  *See id.* at ¶ 24.  At the meeting, it was determined that, due to the M/V AMERICAN CORMORANT's size, length, width, and tonnage, all Port traffic would be stopped during the vessel's arrival and departure from the Port.  *See id.* at ¶ 25.  It was also determined that two pilots (with two "apprentices") and two tugs would be sufficient for facilitating the vessel's movements.  *See id.* at ¶¶ 25-26.  The parties were also made aware at the meeting that the M/V AMERICAN CORMORANT would be without the benefit of bow thrusters.  *See id.* at ¶ 26.

At approximately 0905 hours on August 15, 2004, Defendant Pilots Don Foster and Joe Mosso came onboard the vessel as the assigned compulsory pilots, and according to Plaintiffs, assumed primary responsibility for navigating the vessel to the Port.  *See* Compl., at ¶¶ 29-30.  It is undisputed that, while aboard the

M/V AMERICAN CORMORANT, Pilots Foster and Mosso alternated the position of Lead Pilot.  *See* Statement of Undisputed Facts of Mosso, at ¶13; *see also* Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, at ¶2 (disputing Fact 13 only as to whether Pilot Mosso was nevertheless directing the movement of the vessel and has exposure to liability because of the alleged function of Pilot Mosso and two "apprentices" as lookouts); Aff. of Donald Foster, Ex. "4" to Pls.' Resp. Brief in Opp'n to Def.'s Mot. for Summ. J., at ¶¶ 7-8.  There is also no dispute that, at the time of the incident in question, Pilot Foster directed the maneuvering of the ship. *See* Statement of Undisputed Facts of Mosso, at ¶8; Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, at ¶1 (disputing Fact 18 only as to whether the vessel was under command of Captain Potter, or whether Pilot Foster was in command of the vessel "under the supervision of Captain Potter").  The parties disagree as to who was "in charge" of the vessel at the time of the incident, either compulsory Pilot Foster or the Master of the M/V AMERICAN CORMORANT, Captain John Potter.  *See* Statement of Undisputed Facts of Mosso, at ¶4; Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, at ¶1. However, this dispute is not material to resolution of the Motion addressed herein.

At around 1100 hours, while maneuvering off the east bank of the Pascagoula River in the vicinity of Northrop Grumman Shipyard, the M/V AMERICAN CORMORANT was grounded and/or allided with a submerged object, later determined to be a submarine launchway Number 1 owned by Defendant Northrop Grumman Ship Systems, Inc. ["NGSS"], that extends in a southwesterly direction

from the shore of the east bank of the Pascagoula River.  *See* Compl., at ¶¶ 31, 33A; Statement of Undisputed Facts of Mosso, at ¶¶ 16-18; *see also* Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, p. 1 (not listing Facts 16-18 as contested).

Submerged launchway Number 1 was originally built pursuant to a permit issued by the United States Army Corps of Engineers ["COE"], and subsequently extended under a series of permits issued by the COE.  Marking the submerged launchways was a private aid to navigation, Red Buoy No. 2, owned and maintained by Defendant NGSS.  *See* Statement of Undisputed Facts of Mosso, at ¶¶ 22-23 and 26-29; *see also* Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, p. 1 (not listing Facts 22-23 and 26-29 as contested).

Damage to the vessel from its contact with the submerged launchway included a tear in the outer steel plating along the starboard side of the ship, approximately 20 feet below the water line.  *See* Statement of Undisputed Facts of Mosso, at ¶15; *see also* Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, p. 1 (not listing Fact 15 as contested).

On August 9, 2005, Plaintiffs filed their initial Complaint to recover damages suffered by the M/V AMERICAN CORMORANT, and with their Fourth Amended Complaint ["Complaint"] filed on October 6, 2006, Plaintiffs seek damages of $1,700,000.00, plus attorneys' fees, pre-judgment interest, survey, adjustment and underwriting expenses, and court costs.  *See* Compl., at ¶¶ 58-59.

II. DISCUSSION

A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. *See* FED. R. CIV. P. 56.

A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *See id.* at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986).

B. Motion for Summary Judgment of Mosso

    **1. Liability as a Compulsory Pilot**

It is undisputed that Mosso was one of two compulsory pilots aboard the M/V AMERICAN CORMORANT, but in his Motion for Summary Judgment, Mosso argues that he was the Second Pilot at all times relevant to the allision, such that he lacked any right or duty to direct or control the movement of Plaintiffs' vessel, entitling him to summary judgment. *See* Mosso's Mot. for Summ. J., p. 1. Plaintiffs

maintain that "[a]t approximately 0905 hours on August 15, 2004, Pilots Foster and Mosso assumed control of the AMERICAN CORMORANT on the bridge of the vessel, and the Pilots thereby assumed the primary responsibility for safely navigating the vessel." Compl., at ¶ 29.  Plaintiffs contend that the vessel was under the direction of Pilots Foster and Mosso when it was "negligently caused or allowed...to strike or allide with an uncharted, submerged underwater object consisting of the western end of submerged submarine launch way...resulting in extensive damage to the vessel...." *Id.*, at ¶ 31.  Specifically, Plaintiffs allege that Pilots Foster and Mosso

> failed to ascertain the limits of navigable water and/or limits of sufficient water depth for the AMERICAN COMMORANT; failed to ascertain the location of the submerged launch way hazards in the vicinity of Buoy No. 2; failed to maintain a safe distance from Buoy No. 2; failed to have the requisite knowledge for a compulsory Pilot to safely navigate or pilot the vessel; and failed to properly familiarize themselves with available charts, records, or publications as to the dimensions of the channel and location of the submerged submarine launch ways.

*Id.*, at ¶ 33A.

It is undisputed that while aboard the M/V AMERICAN CORMORANT, Pilots Foster and Mosso took turns as Lead Pilot, and that at the time of the incident in question, Pilot Foster was the Lead Pilot.  *See* Statement of Undisputed Facts of Mosso, at ¶13; Pls.' Resp. Brief in Opp'n to Def.'s Mot. for Summ. J., at p. 13, 18; *see also* Dep. of Captain John Potter, Ex. "1" to Pls.' Resp. Brief in Opp'n to Def.'s Mot. for Summ. J., at p. 76 (testifying that Captain Foster was the pilot who was giving orders during the time in question).  Mosso initially took the con after

the pilots boarded the M/V AMERICAN CORMORANT and piloted the vessel to a point south of the mouth of the Pascagoula River, at which point, Pilot Foster took the con until the vessel docked.  *See* Statement of Undisputed Facts of Mosso, at ¶¶72-73; *see also* Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, p. 1 (not listing Facts 72-73 as contested).  Thus, there can be no dispute that Mosso was not conning the vessel once it entered the Pascagoula River.

Evidence has been presented via the affidavit testimony of Pilot Foster that "[o]nly one pilot at a time pilots the ship," and that after Pilot Foster took over as lead pilot, "[a]s second pilot [Mosso] did not have the duty or the right to involve himself with the lead pilot's conning the ship." Aff. of Donald Foster, Ex. "4" to Pls.' Resp. Brief in Opp'n to Def.'s Mot. for Summ. J., at ¶¶ 7-8   The Court is of the opinion that insufficient evidence has been presented that anyone other than either Pilot Foster or Captain Potter had the con or any other control of the navigation of the vessel immediately prior to or at the time of the incident, or that anyone other than Pilot Foster or Captain Potter was otherwise participating in the management of the vessel during the times relevant to the allision.  Consequently, Mosso cannot be held liable for negligence in directing or controlling the movement of the vessel at the time of the mishap.

As another theory of liability, Plaintiffs assert that Mosso was nevertheless directing the movement of the vessel and is liable because he allegedly functioned as a lookout for the vessel.  *See* Pls.' Resp. and Objection to Proposed Statement of

Uncontested Facts, at ¶2 (disputing Fact 13 only as to whether Pilot Mosso was nevertheless directing the movement of the vessel and is liable because of the alleged function of Pilot Mosso and two "apprentices" as lookouts).  Mosso insists that he was not acting as a lookout and had no duty to act as a lookout.

Plaintiffs allege that Mosso should have acted as a lookout for Pilot Foster and warned of any hazards, and cite Pilot Foster's deposition testimony for the proposition that Mosso and the apprentices were functioning as lookouts.  *See id.* (*citing* Dep. of Donald A. Foster, Ex. "2" to Pls.' Resp. Brief in Opp'n to Def.'s Mot. for Summ. J., at p. 99).  However, this portion of Pilot Foster's deposition reads as follows:

> Q: What were the apprentice pilots doing, say within the ten minute period prior to the time the starboard list was noted?
>
> A: They were observing the operation.
>
> Q: Did you or Pilot Mosso give them any specific jobs to do other than observing?
>
> A: I was maneuvering the ship.  I can't tell you what Joe Mosso was doing for that.

Dep. of Donald A. Foster, Ex. "2" to Pls.' Resp. Brief in Opp'n to Def.'s Mot. for Summ. J., at p. 99.

When asked whether there was sufficient lookout, Pilot Foster stated that "[a]s far as I know.  I don't know that anybody was specifically assigned that particular task.  There was just a number of people on the bow of the ship at that particular time."  Dep. of Donald A. Foster, Ex. "3" to Pls.' Resp. Brief in Opp'n to

Def.'s Mot. for Summ. J., at p. 80.  There has been no suggestion that Mosso was one of the individuals on the bow of the ship.  Rather, Captain Potter testified that Pilot Foster "[a]nd the other three pilots were also in the bridge" at the relevant time.  Dep. of Captain John Potter, Ex. "1" to Pls.' Resp. Brief in Opp'n to Def.'s Mot. for Summ. J., at p. 76.   When Captain Potter was asked in his deposition what the other senior pilot, meaning Mosso, was doing, he could not remember. *See* Dep. of John Potter, Ex. "1" to Pls.' Resp. Brief in Opp'n to Def.'s Mot. for Summ. J., at p. 76.  Captain Potter testified as follows:

> Q: After the turn we've talked about, were any of the other pilots, either the apprentices or the other senior pilots put out on the wings of the bridge?
>
> A: No.
>
> Q: Was the other senior pilot or any of the apprentice pilots positioned as additional lookouts at any time?
>
> A: Not specifically.
>
> Q: Were any of the apprentices or other pilots employed to operate radar or view ranges?
>
> A: No.
>
> Q: Did the senior pilot who was giving the orders instruct the other senior pilots or any of the apprentice pilots to do anything to assist in determining ranges, assess distances, look at radar, things of that nature?
>
> A: To the best of my knowledge, no.

Dep. of John Potter, Ex. "2" to Def.'s Rebuttal in Supp. of Mot. for Summ. J., at pp. 105-106.

There is insufficient evidence in the record indicating that Mosso was acting as a lookout, or that he was expected to act as a lookout by either Pilot Foster or Captain Potter. Moreover, as a lookout, Mosso presumably would have been watching for Red Buoy No. 2, which marked the submerged launchway. The record is replete with testimony from both the Pilot and the Master regarding distances they observed between the M/V AMERICAN CORMORANT and the buoy, and between the assist tugboats and the buoy. A review of the record evidence places it beyond any serious dispute that both men were able to, and did see, the buoy quite clearly prior to the allision.

Essential elements in any negligence-based claim are that there was a duty owed by a defendant to plaintiff, that the duty owed was breached, that the breach resulted in injury sustained by plaintiff, and that there was a casual connection between a defendant's conduct and plaintiff's injury. *See Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000). The duty, or standard, of care is a question of law. *See id.* (internal citations omitted). In this case, the purported existence of a duty owed by Mosso to act as a lookout has not been established by Plaintiffs, and even if established, there is insufficient evidence of a breach of any duty in the record. Consequently, summary judgment is appropriate as to this Defendant.

  **2. Liability as a Member of the Pascagoula Bar Pilots Association**

While the Court has determined that Mosso cannot be held liable for any

alleged negligence based on his conduct aboard the M/V AMERICAN CORMORANT at the time in question, Plaintiffs nevertheless seek to hold Mosso, as a member of the Pascagoula Bar Pilots Association [hereinafter, "PBPA"], jointly and severally liable for the purported negligence of Pilot Foster while he was aboard the vessel. *See* Compl., at ¶¶ 8, 11; Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, at ¶ 7.  Plaintiffs submit that Mosso and the other members of the PBPA were willful or negligent in their purported "failure to ascertain and ensure that [PBPA] members, including Defendant Pilots Foster and Mosso, were competent and well qualified, and properly trained to perform their duties as compulsory pilots aboard the AMERICAN CORMORANT at the times material to this litigation...." *See* Compl., at ¶ 11.

In *Guy v. Donald*, 203 U.S. 399 (1906), the United States Supreme Court determined that, under the facts of that case, the Virginia Pilots Association lacked the power to control its pilot members in the performance of their duties as pilots, as well as the authority to select or discharge its members. *See Guy*, 203 U.S. at 407.  In *Guy,* every pilot belonged to the association.  *See id*.  In this case, it is undisputed that pilot members of PBPA are selected for membership after an application process, and that not all Port of Pascagoula pilots are required to become members of PBPA.  *See* Aff. of Joseph P. Mosso, Jr., Ex. "2" to Mosso's Mot. for Summ. J., at p. 1; Aff. of Donald Foster, Ex. "3" to Mosso's Mot. for Summ. J., at p.1.

The Fifth Circuit has expanded on the general rule announced in *Guy*. *See Dampskibsselskabet Atalanta A/S v. U.S.*, 31 F.2d 961 (5th Cir. 1929). In the *Dampskibsselskabet Atalanta* case, the Fifth Circuit held that a pilots' association and its members are not liable to a third party for one of the pilot's negligence where the association: owns and operates pilot boats which are used for the purpose of placing pilots on, and removing them from, vessels; has no control over the licensing of pilots, but does control membership in its own organization; collects fees earned by individual pilots, takes all of the expenses of the organization out of the pool at the end of the month, and then divides the balance among the members on the basis of the number of days worked by each; and assigns members of the association to work in regular order, with no one being given any preference over any of the others. *See Dampskibsselskabet Atalanta A/S*, 31 F.2d at 961-62. While this inquiry was very fact specific, the Fifth Circuit noted that

> [t]he fundamental principle underlying the exemption of pilots' associations from liability for negligence of their members in performing their duties as pilots is that the association exercises no control over the manner in which those duties are to be performed, and therefore a pilot cannot be said to be an agent of the association in that respect.

*Id.*

In the present case, while PBPA did control membership in its own organization, it cannot be disputed that PBPA did not license its member pilots. A Federal Pilot's License is obtained from the United States Coast Guard, and a State Pilot's License is obtained from the Jackson County Port Authority. *See* Aff. of

-12-

Joseph P. Mosso, Jr., Ex. "2" to Mosso's Mot. for Summ. J., at p. 1; Aff. of Donald Foster, Ex. "3" to Mosso's Mot. for Summ. J., at p.1.  It is undisputed that PBPA is a purely voluntary association of state licensed Pilots who provide pilotage services to ships that call on the Port of Pascagoula, and that membership in PBPA is not necessary to work as a pilot in the Port.  *See* Aff. of Joseph P. Mosso, Jr., Ex. "2" to Mosso's Mot. for Summ. J., at p. 1; Aff. of Donald Foster, Ex. "3" to Mosso's Mot. for Summ. J., at p.1.  Through PBPA, pilots are to able to schedule pilotage services and share the use of a pilot boat and billing services.  *See* Aff. of Joseph P. Mosso, Jr., Ex. "2" to Mosso's Mot. for Summ. J., at p. 1; Aff. of Donald Foster, Ex. "3" to Mosso's Mot. for Summ. J., at p.1.  Finally, and most importantly, neither PBPA nor Mosso exercised any control over the manner in which Pilot Foster performed his duties during the relevant time period aboard the M/V AMERICAN CORMORANT. *See* Aff. of Donald Foster, Ex. "3" to Mosso's Mot. for Summ. J., at p.2 (stating that "[t]he other members of the Association do not control or direct how I performed pilotage services and I could not control or direct how they performed their work as pilots.  Likewise, the Association itself does not control or direct how the pilot members perform their jobs as pilots.")

     A thorough review of the record does not disclose the presence of a genuine dispute of material fact with respect to the foregoing.  As a matter of law, Mosso cannot be held vicariously liable for the alleged negligence of Pilot Foster. Summary judgment as to this Defendant is appropriate.

III. CONCLUSION

The Court finds that there are no genuine issues of material fact with respect to this pending Motion. Because it is clear, as discussed herein, that Pilot Defendant Mosso is entitled to judgment as a matter of law, summary judgment is appropriate in his favor.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited herein, the Motion for Summary Judgment of Defendant Joe Mosso, filed July 9, 2007 [240-1], should be and is hereby **GRANTED,** and all claims asserted against Defendant Joe Mosso are hereby dismissed with prejudice, with each party to bear its own costs.

**SO ORDERED AND ADJUDGED**, this the 3rd day of December, 2007.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE