IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| OSPREY SHIP MANAGEMENT, INC. | § | |
| and CORMORANT SHIPHOLDING | § | |
| CORP. | § | **PLAINTIFFS** |
| | § | |
| v. | § | Civil No. 1:05CV390-HSO-RHW |
| | § | |
| JACKSON COUNTY PORT | § | |
| AUTHORITY, *et al.* | § | **DEFENDANTS** |

**ORDER AND REASONS GRANTING
MOTIONS FOR SUMMARY JUDGMENT OF PILOT DEFENDANTS
ROBERT T. BAKER, WALTER W. GAUTIER, FREDRICK A. LUNDY, SR.,
RONALD T. ROBERTSON, MICHAEL C. TORJUSEN, AND PASCAGOULA
BAR PILOTS ASSOCIATION**

BEFORE THE COURT are the Motions for Summary Judgment of Defendants Robert T. Baker ["Baker"] [228-1], Walter W. Gautier ["Gautier"] [229-1], Fredrick A. Lundy, Sr. ["Lundy"] [232-1],  Ronald T. Robertson ["Robertson"] [234-1], Michael C. Torjusen ["Torjusen"] [236-1], and Pascagoula Bar Pilots Association ["PBPA"] [238-1], all filed July 9, 2007 [hereinafter collectively referred to as "Pilot Defendants"], in the above-captioned cause.  Attached as an exhibit to each Motion was a Statement of Undisputed Facts.  In opposition to Pilot Defendants' Motions for Summary Judgment, Plaintiffs filed a consolidated Response Memorandum [260-1] and a Response and Objections to Proposed Statement of Uncontested Facts [267-1].[1]  Pilot Defendants Gautier and Lundy

---

[1] Plaintiffs' Response and Objections and Response Memorandum are also in opposition to the Motions for Summary Judgment of Pilots Don Foster and Joe Mosso, but these Motions are not addressed in this Order.

[272-1], and Torjusen, Robertson, Baker, and PBPA [273-1][2] filed Rebuttals in support of their Motions.  Pilot Defendants also filed their joint Response and Objection to Plaintiffs' Suggested Undisputed Facts [278-1].  After consideration of the submissions and the relevant legal authorities, the Court finds that Pilot Defendants' Motions for Summary Judgment [228-1], [229-1], [232-1], [234-1], [236-1], and [238-1] are well taken and should be granted.

I. <u>FACTS AND PROCEDURAL HISTORY</u>

The M/V AMERICAN CORMORANT is an oceangoing heavy lift vessel owned and/or operated by Plaintiffs that was scheduled to enter the Port of Pascagoula and dock at a wharf referred to as the Old Grain Docks, Port of Pascagoula.  *See* Compl., at ¶¶ 1-2, 32.  In preparation for the call of the M/V AMERICAN CORMORANT at the Port of Pascagoula [the "Port"], representatives of Plaintiffs attended a "load out" meeting in early August 2004 with representatives of various Defendants to this action, including Defendants Don Foster and Joe Mosso, the harbor pilots who eventually piloted the M/V AMERICAN CORMORANT on the date of the incident at issue in this case.  *See id.* at ¶ 24.  At the meeting, it was determined that, due to the M/V AMERICAN CORMORANT's size, length, width, and tonnage, all Port traffic would be stopped during the vessel's arrival and departure from the Port.  *See id.* at ¶ 25.  It was also determined that two pilots (with two "apprentices") and two tugs would be sufficient

---

[2] Defendant Pilot Mosso also joined in filing the Rebuttal [273-1]; however, Mosso's Motion for Summary Judgment is not addressed in this Order.

for facilitating the vessel's movements. *See id.* at ¶¶ 25-26. The parties were also made aware at the meeting that the M/V AMERICAN CORMORANT would be without the benefit of bow thrusters. *See id.* at ¶ 26.

At approximately 0905 hours on August 15, 2004, Defendant Pilots Don Foster and Joe Mosso came onboard the vessel as the assigned compulsory pilots, and according to Plaintiffs, assumed primary responsibility for navigating the vessel to the Port. *See* Compl., at ¶¶ 29-30. It is undisputed that, while aboard the M/V AMERICAN CORMORANT, Pilots Foster and Mosso alternated the position of Lead Pilot. *See* Statements of Undisputed Facts of Pilot Defs., at ¶13; *see also* Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, at ¶2 (disputing Fact 13 only as it relates to Pilot Mosso and two "apprentices" as lookouts). There is also no dispute that, at the time of the incident in question, Pilot Foster directed the maneuvering of the ship. *See* Statements of Undisputed Facts of Pilot Defs., at ¶8; Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, at ¶1 (disputing whether vessel was under command of Captain Potter, or whether Pilot Foster was in command of the vessel "under the supervision of Captain Potter"). The parties disagree as to who was "in charge" of the vessel at the time of the incident, either compulsory Pilot Foster or the Master of the M/V AMERICAN CORMORANT, Captain John Potter. *See* Statements of Undisputed Facts of Pilot Defs., at ¶4; Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, at ¶1. However, this dispute is not material to resolution of the Motions addressed

-3-

herein.

At around 1100 hours, while maneuvering off the east bank of the Pascagoula River in the vicinity of Northrop Grumman Shipyard, the M/V AMERICAN CORMORANT was grounded and/or allided with a submerged object, later determined to be a submarine launchway Number 1 owned by Defendant Northrop Grumman Ship Systems, Inc. ["NGSS"], that extends in a southwesterly direction from the shore of the east bank of the Pascagoula River.  *See* Compl., at ¶¶ 31, 33A; Statements of Undisputed Facts of Pilot Defs., at ¶¶ 16-18; *see also* Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, p. 1 (not listing Facts 16-18 as contested).

Submerged launchway Number 1 was originally built pursuant to a permit issued by the United States Army Corps of Engineers ["COE"], and subsequently, a series of permits issued by the COE for extensions to the launchway.  Marking the submerged launchways was a private aid to navigation, Red Buoy No. 2, owned and maintained by Defendant NGSS.  *See* Statements of Undisputed Facts of Pilot Defs., at ¶¶ 22-23 and 26-29; *see also* Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, p. 1 (not listing Facts 22-23 and 26-29 as contested).

Damage to the vessel from its contact with the submerged launchway included a tear in the outer steel plating along the starboard side of ship, approximately 20 feet below the water line.  *See* Statements of Undisputed Facts of Pilot Defs., at ¶15; *see also* Pls.' Resp. and Objection to Proposed Statement of

Uncontested Facts, p. 1 (not listing Fact 15 as contested).

On August 9, 2005, Plaintiffs filed their initial Complaint to recover damages suffered by the M/V AMERICAN CORMORANT, and with their Fourth Amended Complaint ["Complaint"] filed on October 6, 2006, Plaintiffs seek damages of $1,700,000.00, plus attorneys' fees, pre-judgment interest, survey, adjustment and underwriting expenses, and court costs.  *See* Compl., at ¶¶ 58-59.

## II. DISCUSSION

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.  *See* FED. R. CIV. P. 56.

A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *See id.* at 324-25.  The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986).

### B.  Motions for Summary Judgment of PBPA and Pilots Torjusen, Robertson, and Baker

In their individual Motions for Summary Judgment, Pilots Torjusen, Robertson, and Baker, and PBPA, each argue that they lacked both any duty or the ability to exercise any control over Plaintiffs' vessel or the Pilots aboard the vessel, entitling them to summary judgment. *See* Defs. PBPA and Pilots Torjusen, Robertson, and Baker's Mots. for Summ. J., p. 1. These Defendants assert that neither Pilot Foster or Pilot Mosso were negligent, and alternatively, they assert that if there was any negligence on the part of Pilots Foster or Mosso, that the Tariff provisions established by the Jackson County Port Authority are applicable and limit all Port of Pascagoula pilots' liability. *See* Defs.' Mems. in Supp. of their Motions for Summ. J., pp. 2, 12.

While it is undisputed that Pilots Torjusen, Robertson, and Baker were not aboard the M/V AMERICAN CORMORANT at the time of the incident in question, Plaintiffs nevertheless seek to hold them and the PBPA, of which they are members, jointly and severally liable for the acts of the pilots aboard the vessel, who are also members of the PBPA. *See* Compl., at ¶¶ 5-7 and 11; Pls.' Resp. and Objection to Proposed Statement of Uncontested Facts, at ¶ 7. Plaintiffs allege that Pilots Torjusen, Robertson, and Baker, and PBPA, were willful or negligent in their alleged "failure to ascertain and ensure that [PBPA] members, including Defendant Pilots Foster and Mosso, were competent and well qualified, and properly trained to perform their duties as compulsory pilots aboard the AMERICAN CORMORANT at the times material to this litigation...." *See* Compl., at ¶ 11.

Moving Defendants cite *Guy v. Donald*, 203 U.S. 399 (1906), for the

proposition that "neither a Pilot Association nor its individual Pilot members could be held liable for the negligence of one of their members...." Defs.' Mems. in Supp. of their Motions for Summ. J., p. 6.  In *Guy*, the Supreme Court determined that, under the facts of that case, the Virginia Pilots Association lacked the power to control its pilot members in the performance of their duties as pilots, as well as the authority to select or discharge its members.  *See Guy*, 203 U.S. at 407.  In *Guy,* every pilot belonged to the association.  *See id.*  In this case, it is undisputed that pilot members of PBPA are selected for membership after an application process, and that not all Port of Pascagoula pilots are required to become members of PBPA. *See* Aff. of Donald Foster, Ex. "1" to PBPA's Mot. for Summ. J., at p.1; Aff. of Joseph P. Mosso, Jr., Ex. "3" to PBPA's Mot. for Summ. J., at p.1.

The Fifth Circuit has expanded on the general rule announced in *Guy*.  *See Dampskibsselskabet Atalanta A/S v. U.S.*, 31 F.2d 961 (5th Cir. 1929).  In the *Dampskibsselskabet Atalanta* case, upon which these Defendants also rely, the Fifth Circuit held that a pilots' association and its members are not liable to a third party for one of the pilot's negligence where the association:  owns and operates pilot boats which are used for the purpose of placing pilots on, and removing them from, vessels; has no control over the licensing of pilots, but does control membership in its own organization; collects fees earned by individual pilots, takes all of the expenses of the organization out of the pool at the end of the month, and then, divides the balance among the members on the basis of the number of days worked by each; and assigns members of the association to work in regular order, with no

one being given any preference over any of the others.  *See Dampskibsselskabet*

*Atalanta A/S*, 31 F.2d at 961-62.  While this inquiry was very fact specific, the Fifth

Circuit noted that

> [t]he fundamental principle underlying the exemption of pilots'
> associations from liability for negligence of their members in performing
> their duties as pilots is that the association exercises no control over the
> manner in which those duties are to be performed, and therefore a pilot
> cannot be said to be an agent of the association in that respect.

*Id.*

In the present case, while PBPA did control membership in its own

organization, it cannot be disputed that PBPA did not license its member pilots.  A

Federal Pilot's License is obtained from the United States Coast Guard, and a State

Pilot's License is obtained from the Jackson County Port Authority.  *See* Aff. of

Donald Foster, Ex. "1" to PBPA's Mot. for Summ. J., at p.1; Aff. of Joseph P. Mosso,

Jr., Ex. "3" to PBPA's Mot. for Summ. J., at p.1.  It is undisputed that PBPA is a

purely voluntary association of state licensed Pilots who provide pilotage services to

ships that call on the Port of Pascagoula, and that membership in PBPA is not

necessary to work as a pilot in the Port.  *See* Aff. of Donald Foster, Ex. "1" to PBPA's

Mot. for Summ. J., at p.1; Aff. of Joseph P. Mosso, Jr., Ex. "3" to PBPA's Mot. for

Summ. J., at p.1.   Through PBPA, pilots are to able to schedule pilotage services

and share the use of a pilot boat and billing services.  *See* Aff. of Donald Foster, Ex.

"1" to PBPA's Mot. for Summ. J., at p.1; Aff. of Joseph P. Mosso, Jr., Ex. "3" to

PBPA's Mot. for Summ. J., at p.1.  Finally, and most importantly, neither PBPA nor

the pilots who were not on board the vessel exercised any control over the manner

in which Pilots Foster and Mosso performed their duties while aboard the M/V AMERICAN CORMORANT.  *See* Aff. of Donald Foster, Ex. "1" to PBPA's Mot. for Summ. J., at p.2 and Aff. of Joseph P. Mosso, Jr., Ex. "3" to PBPA's Mot. for Summ. J., at p.2 (both stating that "[t]he other members of the Association do not control or direct how I performed pilotage services and I could not control or direct how they performed their work as pilots.  Likewise, the Association itself does not control or direct how the pilot members perform their jobs as pilots.")

Plaintiffs have not demonstrated the presence of a genuine dispute of material fact with respect to the foregoing.  As a matter of law, neither PBPA nor its pilot members can be held vicariously liable for the alleged negligence of other pilot members of the association.  Summary judgment as to these Defendants is appropriate.

C.  Motions for Summary Judgment of Pilots Lundy and Gautier

Plaintiffs assert two theories of liability against Pilots Lundy and Gautier, whom Plaintiffs characterize as "apprentice pilots."  First, Plaintiffs advance the same theory regarding the vicarious liability of these pilots as members of PBPA, and second, they assert liability for these individuals' purported negligence while aboard the M/V AMERICAN CORMORANT at the time of the incident in question. *See* Compl., at ¶¶ 9-11, 25, 31, 33B, and 33C.

As for the first theory, that of vicarious liability, Plaintiffs allege in their Complaint that both Pilots Lundy and Gautier were members of PBPA at all material times.  *See* Compl., at ¶¶ 9-10.  If this were true, the above analysis in

Section II.C. is equally applicable to Pilots Lundy and Gautier as members of PBPA.  Summary judgment would be appropriate as to this vicarious liability claim.

Moreover, there is undisputed evidence in the record that both Pilots Lundy and Gautier were not members of PBPA when the incident in question occurred.  *See* Aff. of Frederick A. Lundy, Ex. "2" to Def. Lundy's Mot. for Summ. J., at p. 1; Aff. of Walter W. Gautier, Ex. "2" to Def. Gautier's Mot. for Summ. J., at p. 1.  Rather, *after* Pilot Lundy obtained his State Pilot's Licenses from the Jackson County Port Authority in 2006, and *after* Pilot Gautier obtained his State Pilot's Licenses from the Jackson County Port Authority in 2005, each subsequently became members of PBPA.  *See* Aff. of Frederick A. Lundy, Ex. "2" to Def. Lundy's Mot. for Summ. J., at p. 1; Aff. of Walter W. Gautier, Ex. "2" to Def. Gautier's Mot. for Summ. J., at p. 1.  As persons who were not members of PBPA at the time of the incident in question, Pilots Gautier and Lundy cannot be held vicariously liable for acts of PBPA member pilots.  Therefore, summary judgment is appropriate as to Plaintiffs' claims of vicarious liability against these two Defendants.

With respect to Plaintiffs' second theory asserting negligence on the part of Pilots Lundy and Gautier while aboard the M/V AMERICAN CORMORANT, both Defendants have testified via affidavits that at the time of the incident in question, they were not Bar Pilots, but rather, both were present simply as observers.  *See* Aff. of Frederick A. Lundy, Ex. "2" to Def. Lundy's Mot. for Summ. J., at p. 2; Aff. of Walter W. Gautier, Ex. "2" to Def. Gautier's Mot. for Summ. J., at p. 2.  Captain John Potter, Master of the M/V AMERICAN CORMORANT, agreed in his

deposition that the two "apprentice pilots" on the vessel were observing only.  *See* Dep. of Captain John Potter, Ex. "6" to Defs. Lundy and Gautier's Rebuttal in Supp. of Their Mots. for Summ. J., p. 104.  Captain Potter further confirmed that the "apprentice pilots" did not have radios and were not reporting distances or obtaining any navigational information for the pilots, and that to the best of his knowledge, the senior pilot who was giving the orders did not instruct either of the apprentice pilots to do anything to assist in determining ranges, assessing distances, looking at radar, or other things of that nature.  *See id.* at pp. 104-106.

Insufficient evidence has been presented that Pilots Lundy and Gautier were anything other than observers aboard the M/V AMERICAN CORMORANT during the period of time in question.  Consequently, neither owed any legal duty to Plaintiffs.  Neither Pilot Lundy nor Pilot Gautier held a State Pilot's License at the time, and neither was a member of PBPA.  Even assuming there was a duty owed, sufficient evidence of any breach of duty by these two Defendants has not been offered.  Therefore, summary judgment as to these Defendants is appropriate.

## III. CONCLUSION

The Court finds that there are no genuine issues of material fact with respect to these pending Motions. Because it is clear, as discussed herein, that Pilot Defendants, including the Pascagoula Bar Pilots Association, are entitled to judgment as a matter of law, summary judgment is appropriate in their favor.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited herein, the Motions for Summary Judgment of Defendants, Robert T. Baker

-11-

filed July 9, 2007 [228-1], Walter W. Gautier filed July 9, 2007 [229-1], Fredrick A. Lundy, Sr., filed July 9, 2007 [232-1],  Ronald T. Robertson filed July 9, 2007 [234-1], Michael C. Torjusen filed July 9, 2007 [236-1], and the Pascagoula Bar Pilots Association filed July 9, 2007 [238-1] , should be and are hereby **GRANTED,** and all claims asserted against Defendants Robert T. Baker, Walter W. Gautier, Fredrick A. Lundy, Sr., Ronald T. Robertson, Michael C. Torjusen, and the Pascagoula Bar Pilots Association are hereby dismissed with prejudice, with each party to bear its own costs.

**SO ORDERED AND ADJUDGED**, this the 3rd day of December, 2007.

_s/ Halil Suleyman Ozerden_

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE