**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **OSPREY SHIP MANAGEMENT, INC.** | § | |
| **and CORMORANT SHIPHOLDING** | § | |
| **CORP.** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **Civil No. 1:05CV390-HSO-RHW** |
| | § | |
| **JACKSON COUNTY PORT** | § | |
| **AUTHORITY,** *et al.* | § | **DEFENDANTS** |

**ORDER AND REASONS GRANTING
MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS JACKSON
COUNTY PORT AUTHORITY AND RANDY JOPLIN, HARBORMASTER**

BEFORE THE COURT is the Motion for Summary Judgment of Defendants

Jackson County Port Authority ["JCPA"] and its Harbormaster Randy Joplin

["Joplin"] [collectively, "Moving Defendants"], filed July 6, 2007 [225-1], in the

above-captioned cause.  Plaintiffs filed a Response Brief [256-1], and Moving

Defendants filed a Reply [276-1].  After consideration of the submissions and the

relevant legal authorities, the Court finds that Moving Defendants' Motion for

Summary Judgment [225-1] is well taken and should be granted.

I. <u>FACTS AND PROCEDURAL HISTORY</u>

The M/V AMERICAN CORMORANT is an oceangoing heavy lift vessel

owned and/or operated by Plaintiffs that was scheduled to enter the Port of

Pascagoula and dock at a wharf referred to as the Old Grain Docks, Port of

Pascagoula.  *See* Compl., at ¶¶ 1-2, 32.  In preparation for the call of the M/V

AMERICAN CORMORANT at the Port of Pascagoula [the "Port"], representatives

of Plaintiffs attended a "load out" meeting in early August 2004 with representatives of various Defendants to this action, including Defendants Don Foster and Joe Mosso, the harbor pilots who eventually piloted the M/V AMERICAN CORMORANT on the date of the incident at issue in this case. *See id*. at ¶ 24. At the meeting, it was determined that, due to the M/V AMERICAN CORMORANT's size, length, width, and tonnage, all Port traffic would be stopped during the vessel's arrival and departure from the Port. *See id*. at ¶ 25. It was also determined that two pilots (with two "apprentices") and two tugs would be sufficient for facilitating the vessel's movements. *See id*. at ¶¶ 25-26. The parties were also made aware at the meeting that the M/V AMERICAN CORMORANT would be without the benefit of bow thrusters. *See id*. at ¶ 26.

At approximately 0905 hours on August 15, 2004, Defendant Pilots Don Foster and Joe Mosso came aboard the vessel as the assigned compulsory pilots, and according to Plaintiffs, assumed primary responsibility for navigating the vessel to the Port. *See* Compl., at ¶¶ 29-30.

At around 1100 hours, while maneuvering off the east bank of the Pascagoula River in the vicinity of Northrop Grumman Shipyard, the M/V AMERICAN CORMORANT was grounded and/or allided with a submerged object, later determined to be a submarine launchway Number 1 owned by Defendant Northrop Grumman Ship Systems, Inc. ["NGSS"], that extends in a southwesterly direction from the shore of the east bank of the Pascagoula River. *See* Compl., at ¶¶ 31, 33A;

Moving Defs.' Mem. in Supp. of Mot. for Summ. J., at pp. 1-2.

Submerged launchway Number 1 was originally built pursuant to a permit issued by the United States War Department, the predecessor to the United States Army Corps of Engineers ["COE"], and subsequently, it was extended pursuant to a series of permits issued by the COE.  Moving Defs.' Mem. in Supp. of Mot. for Summ. J., at p. 5.  Marking the submerged launchways was a private aid to navigation, Red Buoy No. 2, owned and maintained by Defendant NGSS.  *See* Compl., at ¶¶ 15, 55; Moving Defs.' Mem. in Supp. of Mot. for Summ. J., at p. 2.

The vessel incurred significant damage as a result of the allision with the launchway.  *See* Compl., at ¶ 31.  On August 9, 2005, Plaintiffs filed their initial Complaint to recover damages suffered by the M/V AMERICAN CORMORANT, and with their Fourth Amended Complaint ["Complaint"] filed on October 6, 2006, Plaintiffs seek damages of $1,700,000.00, plus attorneys' fees, pre-judgment interest, survey, adjustment and underwriting expenses, and court costs.  *See* Compl., at ¶¶ 58-59.

## II. DISCUSSION

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.  *See* FED. R. CIV. P. 56.

A party seeking summary judgment bears the initial burden of identifying

those portions of the pleadings and discovery on file, together with any affidavits,

which it believes demonstrate the absence of a genuine issue of material fact.  *See*

*Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant carries its

burden, the burden shifts to the non-movant to show that summary judgment

should not be granted. *See id.* at 324-25.  The non-moving party may not rest upon

mere allegations or denials in its pleadings, but must set forth specific facts

showing the existence of a genuine issue for trial.  *See Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 256-57 (1986).

B.  Motion for Summary Judgment of JCPA and Joplin

In their Motion for Summary Judgment, JCPA and Joplin argue that "the

incident giving rise to this case occurred outside the jurisdiction of the Jackson

County Port Authority and, consequently, of Randy Joplin, and ... the facts do not

show any basis, whether statutory or otherwise, to support any claim against

Jackson County Port Authority and/or Randy Joplin...." *See* Moving Defs.' Mot. for

Summ. J., pp. 1-2.  Thus, Moving Defendants argue that summary judgment in

their favor is appropriate.  *See id.*, at p. 1.

Plaintiff alleges that JCPA is liable for an unsafe berth, as purportedly

evidenced by incompetent pilots and inaccurate charts; that JCPA and Joplin failed

to properly license and qualify applicants for pilot who had proper training and

knowledge; that JCPA and Joplin failed to supply the pilots with information

concerning navigational aids, obstructions, and water depths although the pilots

relied on them for this information; that JCPA and Joplin are liable for negligence or gross negligence on a *respondeat superior* basis and are not shielded by any Tariff provisions; and that JCPA and Joplin failed to enforce insurance requirements as to the pilots. *See* Pls.' Resp. Br. in Opp'n to Removing Defs.' Mot. for Summ. J., pp. 1-2 (*citing* Compl., at ¶¶ 33C, H, & J; 46; 48; 51).

### 1.    State Law Tort Claims and the Mississippi Tort Claims Act

In their Complaint, Plaintiffs allege that Moving Defendants, among others, "are further liable, individually, jointly and severally, for failure to exercise due care or duty imposed by statute based on the Mississippi Tort Claims Act, Miss. Ann. § 11-46-7(1) *et seq.* ('MTCA'),or as otherwise provided by General Maritime Law, or based on waiver of sovereign immunity...."  Compl., at ¶ 49.  To the extent Plaintiffs assert general state law tort claims against JCPA and its Harbormaster, Randy Joplin, their Complaint must be viewed as an action under the Mississippi Tort Claims Act ("MTCA"), Mississippi Code Ann. § 11-46-1, *et seq.*

The MTCA provides the exclusive civil tort remedy against a political subdivision of the State of Mississippi and an employee of such a political subdivision while the employee is acting within the course and scope of his employment, subject to certain exclusions.  *See* Miss. Code Ann. § 11-46-5.  This Act "is the exclusive route for filing suit against a governmental entity and its employees." *City of Jackson v. Sutton*, 797 So.2d 977, 980 (Miss. 2001).  The Mississippi Supreme Court has stated that "[a]ny claim filed against a governmental entity and its employees must be brought under this statutory

scheme." *Id.* at 980 (*citing Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So.2d 1234, 1236 (Miss.1999)).  The MTCA also provides certain enumerated exceptions to this waiver of immunity, which is discussed in greater detail below in section II(B)(1)(b).

### a.   Are the JCPA and Joplin subject to the MTCA?

While not addressed in the briefing on the Moving Defendants' Motion for Summary Judgment, the parties have not disputed that JCPA falls within the definition of a "political subdivision" of the State of Mississippi as an agency of Jackson County, nor that Joplin, as Harbormaster of the JCPA, was acting within the course and scope of his employment at all times relevant to Plaintiffs' claims. *See* Miss. Code Ann. § 11-46-1.  In fact, Plaintiffs' claims against both are based, at least in part, on the MTCA.  *See* Compl., at ¶ 49.  Plaintiffs' Complaint sues Joplin in his official capacity.  In listing Defendants to the suit, Plaintiffs list Joplin as "Randy Joplin, Harbormaster," and Plaintiffs state that "Defendant, Randy Joplin, Harbormaster, Jackson County Port Authority ('Harbormaster'), at all times material, was a representative of the Jackson County Port Authority...."  Compl., at ¶ 14.  Therefore, the Court finds there can be no dispute that, for purposes of this case, JCPA is a "political subdivision" and that Joplin is an "employee" of a political subdivision, as defined by Miss. Code § 11-46-1.  As a "political subdivision," JCPA is a "governmental entity," as defined by the MTCA.  *See* Miss. Code § 11-46-1(f), (g), (i).

-6-

## b.   Exceptions to Waiver of Sovereign Immunity

While the MTCA provides the exclusive civil tort remedy against a political

subdivision of the State of Mississippi and its employees acting within the course

and scope of their employment, the MTCA also provides certain enumerated

exceptions to this waiver of immunity.   Some of the relevant exceptions provide that

the political subdivision and its employees are not liable for any claim

> (b)  Arising out of any act or omission of an employee of a
> governmental entity exercising ordinary care in reliance upon, or in
> the execution or performance of, or in the failure to execute or perform,
> a statute, ordinance or regulation, whether or not the statute,
> ordinance or regulation be valid;
>                           *   *   *
> (d) Based upon the exercise or performance or the failure to exercise or
> perform a discretionary function or duty on the part of a governmental
> entity or employee thereof, whether or not the discretion be abused;
>                           *   *   *
> (g) Arising out of the exercise of discretion in determining whether or
> not to seek or provide the resources necessary for the purchase of
> equipment, the construction or maintenance of facilities, the hiring of
> personnel and, in general, the provision of adequate governmental
> services;
> (h) Arising out of the issuance, denial, suspension or revocation of, or
> the failure or refusal to issue, deny, suspend or revoke any privilege,
> ticket, pass, permit, license, certificate, approval, order or similar
> authorization where the governmental entity or its employee is
> authorized by law to determine whether or not such authorization
> should be issued, denied, suspended or revoked unless such issuance,
> denial, suspension or revocation, or failure or refusal thereof, is of a
> malicious or arbitrary and capricious nature....

Miss. Code Ann. § 11-46-9(1).

Plaintiffs in this case assert that Defendant JCPA had responsibility

for licensing and qualifying Bar Pilots, for determining which applicants
were competent and well qualified to perform the duties of a Pilot; to
ensure proper training and ensure that qualifications were maintained

by Pilots; and to set and enforce insurance requirements for Pilots and other Licensees of the Port of Pascagoula.

Compl., at ¶ 3.

Plaintiffs allege that Defendants JCPA and Joplin, among others, were negligent in licensing, providing, and requiring use of one or more purportedly incompetent pilots; in approving and/or certifying Pilots Don Foster and Joe Mosso as well qualified or competent; in failing to provide sufficient notices, publications or updates to mariners and users including notices to Pilots Foster and Mosso indicating the specific location of the submerged launchways or the affected dimensions of the channel and stated water depths in the Pascagoula River; in failing to comply with the duties assumed at the load out meeting and to provide a safe berth at the Old Grain Docks; and in failing to enforce insurance requirements for Pilots Foster and Mosso and/or Defendant Pascagoula Bar Pilots Association. *See* Compl., at ¶¶ 33B, 33C, 33E, 33H, 33I, 33J.

Regarding JCPA and Joplin's alleged negligence in licensing, providing, and requiring use of one or more purportedly incompetent pilots, Mississippi Code § 11-46-9(1)(h) is arguably applicable to the facts of this case. Pursuant to this provision, JCPA and Joplin would not be liable for any claim arising out of the issuance of the pilots' licenses unless the issuance "is of a malicious or arbitrary or capricious nature." Miss. Code. Ann. § 11-46-9(1)(h). Plaintiffs make conclusory allegations regarding the alleged improper licensure and qualification of applicants for pilot. *See* Pls.' Resp. Brief in Opp'n to Moving Defs.' Mot. for Summ. J., at pp. 1-

-8-

2.  The record is nevertheless devoid of any evidence that the issuance of Pilots Foster and Mosso's licenses by JCPA was malicious, arbitrary, or capricious.

Even if section 11-46-9(1)(h) does not apply, section 11-46-9(1)(b) and (d) would preclude liability of JCPA and Joplin under the facts of this case.  Plaintiffs assert that "[p]ublished requirements for a Pilot license applicant also document the role of JCPA in the qualifications process. These requirements also involve representation that it is the 'intent' of the JCPA 'to determine which applicants are the best qualified to serve in the capacity of pilot.'" Pls.' Resp. Brief in Opp'n to Moving Defs.' Mot. for Summ. J., at pp. 7-8 (*quoting* JCPA Requirements for a Port Pilot License, Ex. "65" to Dep. of Randy Joplin, attached as Ex. "9" to Pls.' Resp. Brief in Opp'n to Moving Defs.' Mot. for Summ. J.).  It is the responsibility of the JCPA "to determine whether an applicant for the position of pilot is competent and well qualified to perform the duties of a pilot."  JCPA Requirements for a Port Pilot License, Ex. "9" to Pls.' Resp. Brief in Opp'n to Moving Defs.' Mot. for Summ. J, at p. 1.

JCPA's requirement of compulsory pilotage is imposed upon JCPA by Mississippi law.  *See* Miss. Code Ann. § 59-1-41; *see also* Port of Pascagoula Tariff, Section II, Harbor Rule No. 410, Ex. "8" to Pls.' Resp. Br. in Opp'n to Moving Defs.' Mot. for Summ. J., at p. 2.  There is insufficient evidence in the record that JCPA and Joplin failed to exercise ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, this statute by requiring the use of a licensed pilot.  The Court is also of the opinion that the determination of

"which applicants are best qualified to serve in the capacity of pilot" is a discretionary function pursuant to section 11-46-9(1)(d), entitling JCPA and Joplin to immunity under the MTCA.  Plaintiffs' claim regarding JCPA and Joplin's alleged negligence in licensing, providing, and requiring use of one or more purportedly incompetent pilots cannot withstand summary judgment.

Plaintiffs also contend that "[f]or all intents and purposes, the pilots are employees" of JCPA, and seek to hold JCPA liable on a *respondeat superior* basis. *See* Pls.' Resp. Brief in Opp'n to Moving Defs.' Mot. for Summ. J., at pp. 6-7.  Though this contention is disputed among the parties, the Court is of the opinion that insufficient evidence has been presented on this theory to preclude summary judgment.  There is insufficient evidence in the record to support a finding that Pilots Foster or Mosso were under the direction and control of Defendants JCPA or Joplin during the time in question.  A governmental entity which merely licenses, regulates and controls the pilots, rather than employs them or engages their services as subcontractors, and receives no fees for their services, is generally not vicariously liable for their negligence.  *See Kitanihon-Oi S.S. Co. v. General Const. Co.*, 678 F.2d 109, 111-12 (9th Cir. 1982).  JCPA's requirement of compulsory pilotage is imposed upon JCPA by Mississippi law.  *See* Miss. Code Ann. § 59-1-41; *see also* Port of Pascagoula Tariff, Section II, Harbor Rule No. 410, Ex. "8" to Pls.' Resp. Br. in Opp'n to Removing Defs.' Mot. for Summ. J., at p. 2.  The Court finds that neither JCPA nor Joplin can be held liable for the conduct of the pilots under the facts of this case.

Plaintiffs further allege that JCPA and Joplin were negligent in failing to

provide sufficient notices, publications or updates to mariners and users, including notices to Pilots Foster and Mosso indicating the specific location of the submerged launchways or the affected dimensions of the channel, and stated water depths in the Pascagoula River, and that JCPA and Joplin were negligent in failing to comply with the duties assumed at the load out meeting and provide a safe berth at the Old Grain Docks. As discussed in more detail in Section II(B)(2)(a), no authority has been presented, and none found, imposing these purported duties upon JCPA and Joplin.

If a duty is discretionary, and not ministerial, the discretionary function exemption to immunity under the MTCA is applicable. *See* Miss. Code Ann. § 11-46-9(1)(d). A duty is discretionary if the government actor is required to exercise his or her judgment or discretion in performing the duty. *See Dancy v. East Miss. State Hosp.*, 944 So.2d 10, 17-18 (Miss. 2006) (*citing T.M. v. Noblitt*, 650 So.2d 1340, 1343 (Miss. 1995)). "A duty is ministerial and not discretionary if it is imposed by law and its performance is not dependent on the employee's judgment." *Mississippi Dep't of Transp. v. Cargile*, 847 So.2d 258, 267 (Miss. 2003) (*citing Mohundro v. Alcorn County*, 675 So.2d 848, 853 (Miss. 1996)). "In determining whether governmental conduct is discretionary the Court must answer two questions: (1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives." *Bridges v. Pearl River Valley Water Supply Dist.*, 793 So.2d 584, 588 (Miss. 2001) (*citing Jones v. Mississippi Department of Transportation*, 744 So.2d 256, 260 (Miss.

1999)).

In this case, the duties allegedly breached are not imposed upon JCPA or Joplin by statutory or regulatory mandates, including the purported duties to provide sufficient notices, publications or updates to mariners and users indicating the specific location of the submerged launchways or the affected dimensions of the channel and stated water depths in the Pascagoula River.  If not imposed by statutory or regulatory mandate, any duty purportedly owed by JCPA and Joplin would involve "choice or judgment," and would be discretionary.  These above-described claims, including Plaintiffs' claims that JCPA and Joplin failed to properly license and qualify applicants for pilot, failed to provide a safe berth, failed to supply the pilots with information, and failed to enforce insurance requirements as to the pilots, are subject to the discretionary function exception to the waiver of the State's sovereign immunity.  *See Jones v. Mississippi Department of Transportation*, 744 So.2d 256, 260 (Miss. 1999)) (noting that "[s]ection 11-46-9 appears to be patterned after 28 U.S.C. § 2680(a), the 'discretionary function' exception to the Federal Tort Claims Act," and adopting the public policy function test as set out in *United States v. Gaubert*, 499 U.S. 315, 322 (1991) under Federal Tort Claims Act).

To the extent that Plaintiffs' unsafe berth claims, which are essentially claims that JCPA failed to provide adequate berthing facilities, are governed by state law, they are also barred by section 11-46-9(1)(g) of the Mississippi Code.  The discretionary determination whether to seek or provide the resources necessary for the maintenance of facilities and, in general, the provision of adequate governmental

services, is excepted from the waiver of the State's sovereign immunity.  *See* Miss. Code Ann. § 11-46-9(1)(g).

As for JCPA and Joplin's alleged negligence in failing to enforce insurance requirements for Pilots Foster and Mosso and/or Defendant Pascagoula Bar Pilots Association, the MTCA precludes this claim.[1]  No authority has been provided that any insurance requirements are imposed on port pilots by statutory or regulatory mandate, and any duty purportedly assumed by JCPA and Joplin to enforce such insurance requirements would have involved choice or judgment.  Moreover, any causal link between a failure to require insurance and this incident is too attenuated to support an allegation that JCPA and Joplin should be held liable for the allision in this case for not enforcing an insurance requirement.

The Court is of the opinion that the record establishes that each of the allegations related to Plaintiffs' state law tort claims against JCPA and Joplin fall within one or more of the exceptions enumerated above.  *See* Miss. Code Ann. § 11-46-9(1)(b), (d), (g), (h).   Therefore, their state law tort claims against JCPA and Joplin must be dismissed.

### c.    Threshold Procedural Requirements of the MTCA

Even assuming Plaintiffs' claims against JCPA and Joplin are not barred by the exceptions to the waiver of the State's sovereign immunity, as detailed in Section II(B)(1)(b), the Court is of the opinion that Plaintiffs' claims against Moving

---

[1]  While the parties dispute the insurance requirements for port pilots and whether those requirements were properly enforced, this dispute is not material to determination of this Motion.

Defendants are nevertheless barred by the MTCA on procedural grounds.

Certain procedural requirements must be complied with before an action is filed pursuant to the MTCA.  *See South Central Regional Medical Center v. Guffy*, 930 So.2d 1252, 1256 (Miss. 2006).  First, a plaintiff must exhaust all administrative remedies within a governmental entity before suing the entity.  *See* Miss. Code § 11-46-11(1).  Then, the plaintiff must file a written notice of claim with the chief executive officer of the governmental entity ninety days prior to filing suit.  *See* Miss. Code § 11-46-11(1), (2).

The written notice of claim must include several items of information, and it must be in writing.  *See* Miss. Code § 11-46-11(2).  The notice must contain "a short and plain statement of the facts upon which the claim is based," including the circumstances that brought about the injury, the extent of the injury, the time and place the injury occurred, the names of the persons involved, the amount of money damages sought, the residence of the person making the claim at the time of the injury, and the claimant's residence at the time of filing the notice.  *See id*. Mississippi courts require "substantial compliance" with these requirements in order to provide adequate notice under the MTCA.  *See Suddith v. University of Southern Mississippi,* 2007 WL 2178048, *14 (Miss. App. July 31, 2007).

Attached to Plaintiffs' Memorandum in Opposition to Moving Defendants' Motion for Summary Judgment was a copy of a "Master's Notice of Protest."  *See* Master's Notice of Protest, Ex. "6" to Pls.' Mem. in Opp'n to Moving Defs.' Mot. for

Summ. J., at p. 3.  The Master's Notice arguably is not in "substantial compliance" with the notice of claim requirements of the MTCA, because it did not inform the JCPA and Joplin of Plaintiffs' intent to file a claim in court, did not state the amount of damages sought, and did not identify the residence of the person making the claim at the time of the injury and at the time of filing the notice.  *See* Miss. Code Ann. § 11-46-11(2); *see also Suddith,* 2007 WL 2178048, at *14.  Moreover, there is no allegation or indication of delivery method of the Master's Notice, and the statute requires delivery "shall be delivered in person or by registered or certified United States mail."  Miss. Code Ann. § 11-46-11(2).

As for the timing of giving notice of claim, the Mississippi Supreme Court has insisted that strict compliance with the ninety-day notice requirement of section 11-46-11(1) is mandatory.  *See University of Mississippi Medical Center v. Easterling*, 928 So.2d 815, 819-20 (Miss. 2006); *see also Arceo v. Tolliver*, 949 So.2d 691, 697 n.5 (Miss. 2006) (noting that the Mississippi Supreme Court requires "'strict compliance' with section 11-46-11(1), pertaining to the 90-day notice requirement, while, at the same time, [it] continue[s] to adhere to what has been termed 'substantial compliance' regarding section 11-46-11(2) and what is required to be contained in the notice") (*citing Easterling*, 928 So.2d at 819-20).  The Court has further held that "the responsibility to comply with the ninety-day notice requirement under Section 11-46-11(1) lies with the plaintiff."  *Id.* at 820.

Despite the fact that Moving Defendants affirmatively pleaded Plaintiffs'

failure to comply with the requirements of section 11-46-11 in their First Amended
Answer [44-1], no evidence has been presented that Plaintiffs complied with the
ninety-day notice requirement of that statute. The Master's Notice discussed above
is not dated. It only provides the date of the incident in question. Therefore,
Plaintiffs have not carried their summary judgment burden in demonstrating that
their state law tort claims against JCPA and Joplin comply with the clear mandate
of the MTCA, and their claims are subject to dismissal for this reason as well. *See
Easterling*, 928 So.2d at 819-20*; see also Clanton v. DeSoto County Sheriff's Dept.*,
963 So.2d 560, 563 (Miss. App. 2007).

### 2. Other Claims against Moving Defendants

#### a. Safe Berthing and Wharfinger Duties

To the extent that Plaintiffs state any additional claims against Moving
Defendants, these would arguably include ones under general maritime law.
Plaintiffs maintain that JCPA and Joplin failed to provide a safe berth and breached
their duty as a wharfinger due to the danger posed by the submerged launchway.
*See* Compl., at ¶ 33H. Plaintiffs argue that Moving Defendants, among others,
"failed to determine and ensure that the berth area and intended means of
ingress/egress was safe, navigable and properly marked." Compl., at ¶ 33I.

In response to Plaintiffs' allegations that they had primary responsibility for
determining the positions of submerged objects that might present a hazard to
navigation within the Port and for ascertaining and distributing notices and
publications to the pilots licensed under their authority, JCPA and Joplin argue that

"the primary responsibility for determining the positions of submerged objects, according to United States statute, rests with the owner of that submerged object, in the first instance, and with the U.S. Army Corps of Engineers," and that neither JCPA nor Joplin "has any duty to mark a submerged launchway owned by a private party, or to ensure that Buoy No. 2 remains in its proper position." Defs. JCPA and Joplin's Mem. in Supp. of Their Mot. for Summ. J., pp. 2-3. JCPA and Joplin contend that "Pilots Foster and Mosso knew the location of the submerged launchways owned by Northrop Grumman, and those launchways were clearly marked on the navigation chart and other information available to the AMERICAN CORMORANT." Defs. JCPA and Joplin's Mem. in Supp. of Their Mot. for Summ. J., pp. 2-3.

JCPA and Joplin state that they are not responsible for maintaining Red Buoy No. 2, which marks the launchway obstruction.   33 C.F.R. § 64.21 requires that the owner or operator of a structure which is considered to be an obstruction to navigation apply to the U.S. Coast Guard for authorization to mark the structure, and obtain instructions from the Coast Guard as to the appropriate marking requirements. Lt. Commander Brian Hofferber of the U.S. Coast Guard has testified in this case that it is the responsibility of the owner of a private aid to navigation to maintain its condition and ensure its proper location. *See* Dep. of Lt. Commander Brian Hofferber, Ex. "E" to Defs. JCPA and Joplin's Mem. in Supp. of Their Mot. for Summ. J., at p. 192. In this case, the undisputed owner and/or operator of the launchway is Defendant NGSS. Defendants JCPA and Joplin owed no duty to

properly mark the launchway or to ensure that the private aid to navigation, Red

Buoy No. 2, was properly positioned.  *See* 33 C.F.R. § 64.21.

Plaintiffs also assert that JCPA is liable for breaching its safe berth warranty

and its wharfinger duties.  *See* Pls.' Resp. Br. in Opp'n to Removing Defs.' Mot. for

Summ. J., p. 2.  Plaintiffs contend that the requirement to provide a safe berth

extends to the approach waters.  *See* Pls.' Resp. Br. in Opp'n to Removing Defs.' Mot.

for Summ. J., at p. 3.   Plaintiffs maintain that

> [a]s a wharfinger supplying berth facilities for a vessel with a known
> draft, JCPA was obligated to ensure the safety of the dock and the
> approaches, which included the duty to search for or identify hazards by
> periodic soundings, all of which was necessary to ensure the approaches
> to its berth were safe for the incoming vessel....

Pls.' Resp. Br. in Opp'n to Removing Defs.' Mot. for Summ. J., at p. 3.

Plaintiffs allege that Joplin, as Harbormaster of JCPA, made representations

regarding the safety of the berth to vessel representatives after receiving

information regarding the vessel's length, draft, and berthing needs, and that he

supplied water depths at the berth and in relation to the federal channel.  *See id.*

Joplin testified that he stated at the load out meeting that inside the confines

of the federal channel, "[t]he draft of the vessel...was not going to be a problem."  *See*

Dep. of Randolph T. Joplin, Ex. "2" to Pls.' Resp. Br. in Opp'n to Removing Defs.'

Mot. for Summ. J., at p. 124.  JCPA obtained soundings about once a year, or more

often if the JCPA "had reason to believe there was a problem with water depth

alongside our docks," and after dredging.  *See* Dep. of Randolph T. Joplin, Ex. "2" to

Pls.' Resp. Br. in Opp'n to Removing Defs.' Mot. for Summ. J., at p. 22.  Joplin also

testified that if there was an obstruction in the water "between the Federal channel

and [the] dock, [he] would be interested in it."  Dep. of Randolph T. Joplin, Ex. "2" to

Pls.' Resp. Br. in Opp'n to Removing Defs.' Mot. for Summ. J., at pp. 28-29.

When asked to define what he considered to be the "approach" to the grain

elevator dock by reviewing an illustration, Joplin defined it is an area between the

grain elevator dock (located on the western side of the Pascagoula River) and the

western most line indicating where the federal channel was on the illustration–the

"immediate area where a vessel would be pushed to the bulkhead by harbor tugs or

pulled directly away from the bulkhead by harbor tugs."  Dep. of Randolph T. Joplin,

Ex. "2" to Pls.' Resp. Br. in Opp'n to Removing Defs.' Mot. for Summ. J., at pp. 29-30.

Joplin testified that, on average, the "approach" is about a hundred feet around the

dock.  *See* Dep. of Randolph T. Joplin, Ex. "2" to Pls.' Resp. Br. in Opp'n to Removing

Defs.' Mot. for Summ. J., at p. 30.  There can be no dispute that this area, as Joplin

described it, does not encompass the area where the allision occurred, on the eastern

side of the River and south of the berth.

The Fifth Circuit has stated that

> [i]t is well settled that a wharfinger is not the guarantor of the safety of
> a ship coming to his wharf. He is, however, under a duty to exercise
> reasonable diligence to furnish a safe berth and to avoid damage to the
> vessel.  This includes the duty to ascertain the condition of the berth, to
> make it safe or warn the ship of any hidden hazard or deficiency known
> to the wharfinger or which, in the exercise of reasonable care and
> inspection, should be known to him and not reasonably known to the
> shipowner.

-19-

*Trade Banner Line, Inc. v. Caribbean S. S. Co., S. A.*, 521 F.2d 229, 230 (5th Cir. 1975) (internal citations omitted).

"[T]here is no duty on the part of a wharfinger to provide a berth with safe surroundings (other than an entrance and exit) or to warn that hazards exist in its vicinity...." *Id.* As noted by Defendants JCPA and Joplin,

> [a] "berth" is the location where the loading and discharge operation occurs. It may include a dock, anchorage, or offshore mooring, or may be alongside another vessel.

Defs. JCPA and Joplin's Reply Mem. in Supp. of Their Mot. for Summ. J., p. 2 (*quoting* Smith, J. Bond, Jr., *Time and Voyage Charters: Safe Port/Safe Berth*, Tulane Law Review, Vol. 49, p.861).

The expansive definition of "berth" that Plaintiffs suggest, including the area of the launchway in question–south of and on the opposite side of the Pascagoula River–is beyond that contemplated by courts. Alan Moeller, JCPA's Manager of Facilities and Operations, testified that JCPA has no jurisdiction of that part of the Pascagoula River. *See* Moving Defs.' Reply Brief, at p. 2 (*quoting* Dep. of Alan Moeller, at p. 64, ll. 14-18). Under the undisputed facts of this case, the Court finds that there is insufficient evidence in the record to indicate that either JCPA or Joplin owed or breached any alleged duty to warn of any danger that may have been posed by the submerged launchway.

Even if the launchways in question were considered part of the "approach" to the grain elevator dock, as Plaintiffs assert, there is insufficient evidence in the record to establish the liability of JCPA and Joplin. The duty of a wharfinger to warn of any hidden hazard or deficiency only applies if the hidden hazard or

deficiency is known, or should be known, to the wharfinger, ***and*** is not reasonably known to the shipowner.  *See Trade Banner Line, Inc.*, 521 F.2d at 230.  If the alleged obstruction or condition is open and obvious, or where those in control of the vessel have actual knowledge of its existence, no warning by the wharfinger is required.  *See Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 795 (5th Cir. 1977) (*citing General Construction Co. v. Isthmian Lines, Inc.*, 259 F. Supp. 336, 339 (D. Or. 1966)).

In this case, while compulsory Pilot Foster was not physically at the helm of the vessel, it is undisputed as between Plaintiffs and Moving Defendants that Foster was, for all intents and purposes, in control of the navigation of the vessel as it approached the dock.  It is also undisputed for the purposes of this Motion that both Pilots Foster and Mosso were aware of the general, though perhaps not specific, location of the hazard in this case, the NGSS launchway.  According to the affidavit testimony of Pilot Foster, he, as well as other pilots and professional mariners for the Port of Pascagoula, knew about the submerged launchways, and believed that Buoy Number 2 marked the outer end of the ways.  *See* Aff. of Donald Foster, Ex. "5" to Pls.' Resp. Brief in Opp'n to Removing Defs.' Mot. for Summ. J., at ¶¶ 11-13.  Chart 11375 of the National Oceanic and Atmospheric Administration identifies Buoy No. 2, and The Light List, published by the U.S. Coast Guard, states that Buoy No. 2 "[m]arks outer end of submerged ways." *See* Defs. JCPA and Joplin's Reply Mem. in  Supp. of Their Mot. for Summ. J., p. 4 (*quoting* U.S. Coast

Guard Light List, Volume IV, Gulf of Mexico).  Therefore, even assuming that the subject launchway was in the sufficient vicinity of the dock to fall within the purview of responsibility of the wharfinger, no duty to warn of this danger or condition arose as to JCPA or Joplin.

        **b.**    **Contract Claims**

Plaintiffs assert that their claims against Defendants include a "maritime cause of contract and tort involving a vessel grounding...."  Compl., at p. 1. However, Plaintiffs only articulate a contract-type cause of action as to Defendant Colle Towing Company, Inc.  *See* Compl., at ¶¶ 38, 41.  No contract claims are advanced as to Moving Defendants in the Complaint, and the record is devoid of sufficient evidence supporting the existence of any contract between Plaintiffs and either Moving Defendant.  Therefore, summary judgment is appropriate as to any contract claims Plaintiffs may be asserting against Moving Defendants.

III. <u>CONCLUSION</u>

The Court finds that there are no genuine issues of material fact with respect to this pending Motion.  Because it is clear, as discussed herein, that Defendants Jackson County Port Authority and Randy Joplin, Harbormaster, are entitled to judgment as a matter of law, summary judgment is appropriate in their favor.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited herein, the Motion for Summary Judgment of Defendants Jackson County Port Authority and Randy Joplin, Harbormaster, filed July 6, 2007 [225-1], should be and is hereby **GRANTED,** and all claims asserted against Defendants Jackson

County Port Authority and Randy Joplin, Harbormaster, are hereby dismissed with

prejudice, with each party to bear its own costs.

**SO ORDERED AND ADJUDGED**, this the 4th day of December, 2007.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE