**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **OSPREY SHIP MANAGEMENT, INC.** § | | |
| **and CORMORANT SHIPHOLDING** § | | |
| **CORP.** § | | **PLAINTIFFS** |
| § | | |
| **v.** § | **Civil No. 1:05CV390-HSO-RHW** | |
| § | | |
| **JACKSON COUNTY PORT** § | | |
| **AUTHORITY,** *et al.* § | | **DEFENDANTS** |

**ORDER AND REASONS GRANTING DEFENDANT NORTHROP
GRUMMAN SHIP SYSTEMS, INC.'S MOTION *IN LIMINE* TO STRIKE THE
REPORT AND OPINIONS OF ERIK J. FISKE**

BEFORE THE COURT is the Motion *in Limine* of Defendant Northrop
Grumman Ship Systems, Inc. ["NGSS"] to Strike the Report and Opinions of Erik J.
Fiske [308-1] ["Motion"], filed January 11, 2008, in the above-captioned cause.
Plaintiffs filed a Response [321-1] on January 18, 2008.  After consideration of the
submissions and the relevant legal authorities, the Court finds that NGSS's Motion
[308-1] should be granted.

I.  DISCUSSION

Mr. Fiske is employed as a Risk Manager by APL Maritime, Ltd., formerly
known as Osprey Ship Management, Inc., one of the Plaintiffs in this action.  *See*
Aff. of Erik Fiske, at ¶ 1, attached as Ex. "3" to Pls.' Resp.  While the Court has not
been provided a copy of Plaintiffs' expert witness designation, based upon Mr.
Fiske's report and the parties' briefs, Plaintiffs apparently designated Mr. Fiske as
a damages expert.

## A.   **Expert Qualification**s

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court...." Fed. R. Evid. 104(a).  Regarding expert testimony, the Court should examine a witness' qualifications to determine whether he or she is, in fact, "qualified as an expert by knowledge, skill, experience, training, or education...." Fed. R. Evid. 702.  "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 412 (5th Cir. 2000).

While Plaintiffs do not profess that Mr. Fiske has any specialized training or education in evaluating damages to vessels such as the M/V AMERICAN CORMORANT, they assert that Mr. Fiske's almost 30 years of experience involving claims management and investigation, his direction and personal knowledge concerning the facts of this case, and his role from the outset in keeping track of repair costs and the vessel's loss of use as part of his job duties establish his competence to testify as an expert on Plaintiffs' damages.  *See* Pls.' Resp., at p. 1. According to his curriculum vitae ("C.V."), Mr. Fiske has handled claims for shipping companies and/or marine insurers ranging from toxic tort to personal injury claims.  *See* Fiske C.V., at pp. 1-3, attached as Ex. "B" to NGSS's Mot.  While the Court is not convinced that Plaintiffs have met their burden of demonstrating that their proffered expert is qualified to testify on the issue of their damages,

because the Court finds that the methodology employed by Mr. Fiske is not reliable, which is discussed in Section I(B) below, his testimony as an expert should be excluded.

**B.      Relevancy and Reliability**

When evaluating expert testimony, the overarching concern is whether the expert testimony is "relevant" and "reliable." *See Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007) (*citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).  Expert testimony is relevant when it relates to any issue in the case. *See Daubert*, 509 U.S. at 591.  Federal Rule of Evidence 702's requirement that evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue" goes primarily to relevance.  *See id.* (*citing* Fed. R. Evid. 702).  In this case, it is beyond dispute that testimony about Plaintiffs' damages is relevant.

The Court must next consider whether the reasoning or methodology employed by Mr. Fiske is reliable.  "In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Daubert*, 509 U.S. at 590.  "The adjective 'scientific' implies a grounding in science's methods and procedures, while the word 'knowledge' connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds." *Id.*  Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* at 592-93.

*Daubert* "provides an illustrative list of factors that may aid a court in

evaluating reliability." *Mathis v. Exxon*, 302 F.3d 448, 460 (5th Cir. 2002).  Those

factors are

> (1) whether the expert's theory can be or has been tested; (2) whether the
> theory has been subject to peer review and publication; (3) the known or
> potential rate of error of a technique or theory when applied; (4) the
> existence and maintenance of standards and controls; and (5) the degree
> to which the technique or theory has been generally accepted in the
> scientific community.

*Mathis*, 302 F.3d at 460.

In this case, Plaintiffs argue that NGSS "fails to distinguish between Fiske's

testimony as relating to causation *versus* authentication of bills and costs for repair

costs, and knowledge of actual damages."  Pls.' Resp., at pp. 2-3 (emphasis in

original).  Plaintiffs contend that Mr. Fiske is qualified to testify regarding the

actual repair expenses incurred, and that he is knowledgeable concerning Plaintiffs'

alleged loss of use damages.  *See id.*, at p. 3.  The Court appreciates the distinction

that Plaintiffs attempt to draw, and is of the opinion that Mr. Fiske, through his

own personal experiences and as a corporate representative of Plantiff(s), may

testify as a fact witness on those matters upon which he is competent.  The Court

nevertheless finds that the methodology underlying Mr. Fiske's proffered testimony

as an expert is subject to a *Daubert* analysis, pursuant to Federal Rule of Evidence

702.

The majority of Mr. Fiske's written report is a factual account of the allision

and repairs made to the M/V AMERICAN CORMORANT.  Mr. Fiske makes

conclusory statements about reasonableness of the repair costs.  *See* Fiske Report,

at p. 2, attached as Ex. "A" to NGSS's Mot.  However, Mr. Fisk's report does not disclose his reasoning or methodology for arriving at this conclusion, which prevents the Court from making its required preliminary assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.  Consequently, Mr. Fiske's testimony regarding the reasonableness of the repair costs and their allocation is not admissible as expert testimony.  *See Hathaway v. Bazany,* 507 F.3d 312, 318 (5th Cir. 2007) (stating that "the existence of sufficient facts and a reliable methodology is in all instances mandatory."); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (holding that "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.").

As for Mr. Fiske's estimate of loss of use damages, he opines that the "AMERICAN CORMORANT would have earned revenue, after its deliveries scheduled at the time of the allision, of between $924,500 and $3,246,500," but for the allision.  Fiske Report, at p. 3, attached as Ex. "A" to NGSS's Mot.  NGSS asserts, among other things, that Mr. Fiske used an improper methodology for calculating the loss of use damages.  *See* NGSS's Mem. in Supp. of its Mot., at p. 2.

Mr. Fiske states in his written report this estimate is "[b]ased upon an average hire rate of $22,500 per day as given in information provided for the charter to carry ADRIATIC II," which was the voyage during which the allision occurred.  Fiske Report, at p. 3, attached as Ex. "A" to NGSS's Mot.  In his

deposition, Mr. Fiske acknowledged that this information may have been inaccurate, but that "[t]he numbers for the voyages come very close to that." Dep. of Fiske, at p. 115, attached as Ex. "C" to NGSS's Mot. The voyages to which he refers are past contracts for the vessel for voyages in 2004. Mr. Fiske apparently utilized this data to calculate the $22,500 rate for average earnings of the vessel over the period that it operated in commercial service. *See* Dep. of Fiske, at p. 114, attached as Ex. "C" to NGSS's Mot.

Dividing the total loss of use damages range of between $924,500 and $3,246,500 provided by Mr. Fiske in his report by the $22,500 per day rate he used, Mr. Fiske's loss of use damage estimate equates to a loss of use time in the range of approximately forty-one (41) to one hundred forty-four (144) days. However, in his deposition, Mr. Fiske opined that, but for the allision, the "AMERICAN CORMORANT would have been available for new cargo on or about October 1, 2004, and would have been able to earn freight from that date to February 28, 2005, a period of 151 days." Fiske Report, at p. 3, attached as Ex. "A" to NGSS's Mot; *see* Dep. of Fiske, at pp. 113-14, attached as Ex. "C" to NGSS's Mot. (testifying that Plaintiffs are claiming loss of use of 151 days at average rate of $22,500 per day).

Using a 151 day period of loss of use assumes that the vessel could have been chartered every day from the end of its last voyage, had there not been an allision, until the date on which Plaintiffs contend that the vessel would have been sold. The Court finds that this was not a reasonable or justified assumption, particularly given the fact that Mr. Fiske testified in his deposition that he did not know

whether the vessel owners had even marketed the ship to carry any additional

cargo from mid-December 2004 until the end of February 2005.  *See* Dep. of Fiske,

at p. 120, attached as Ex. "C" to NGSS's Mot.; *see also Inland Oil & Transp. Co. v.*

*Ark-White Towing*, 696 F.2d 321, 326-27 (5th Cir. 1983) (holding that loss of use

was not proved with reasonable certainty where there was "no evidence that the ...

barges *would have been used* during this time span.") (emphasis in original)

(*abrogated on different grounds by City of Milwaukee v. Cement Div., Nat. Gypsum*

*Co.*, 515 U.S. 189 (1995)); *Johnson v. Otto Candies, Inc.*, 828 F.2d 1114, 1119 (5th

Cir. 1987).

Even assuming that the 151 day figure constituted a reasonable estimate for

establishing the length of the loss of use period, Mr. Fiske offers no explanation for

the discrepancy between the 151 day figure and the apparent range of 41 and 144

days for his damages calculation.  Based on this discrepancy, the Court is unable to

conclude that the reasoning or methodology underlying Mr. Fiske's testimony is

valid and that his reasoning or methodology can be reliably applied to the facts in

this case.  *See Daubert*, 509 U.S. at 592-93.

Moreover, Mr. Fiske admittedly did not employ the generally accepted "three

voyage rule" in calculating Plaintiffs' loss of use claim, and Plaintiffs have not

sufficiently established that Mr. Fiske used any other acceptable methodology for

making his calculations.  *See* Dep. of Fiske, at p. 114, attached as Ex. "C" to NGSS's

Mot.  Rather, as noted above, Mr. Fiske simply used an average hire rate of $22,500

per day, a rate he apparently derived either from one voyage or from all contracts in

2004.  *See id.*; *see also* Fiske Report, at p. 3, attached as Ex. "A" to NGSS's Mot.;

Dep. of Fiske, at pp. 113-14, attached as Ex. "C" to NGSS's Mot.

According to the traditional "three voyage rule," "the court determines the

charter hire rate for the voyage immediately preceding the collision, the charter

hire rate during the voyage of the casualty, and the charter hire rate of the first

voyage succeeding the casualty and averages them."  *Marine Transport Lines, Inc.*

*v. M/V Tako Invader*, 37 F.3d 1138, 1140-41 (5th Cir. 1994) (*quoting Kim Crest,*

*S.A. v. M.V. Sverdlovsk*, 753 F. Supp. 642, 650 (S.D. Tex. 1990); *citing Delta S.S.*

*Lines, Inc. v. Avondale Shipyards, Inc.*, 747 F.2d 995, 1001 (5th Cir. 1984) (noting

the "time honored rule in maritime cases that a proper method of determining lost

detention profits is to seek a fair average based on a number of voyages before and

after")).  With this calculation, an average revenue per voyage is determined, which

is then reduced by the estimated average variable costs associated with those three

voyages and by a probable utilization rate.  *See id.* at 1140-41.

Mr. Fiske did not employ the three voyage rule in calculating Plaintiffs' loss

of use damages.  Plaintiffs argue that Mr. Fiske did explain fully in his deposition

the amount of hire which may apply under a three voyage rule.  *See* Pls.' Resp., at p.

7.  While Mr. Fiske did point to the three voyages that would be considered in

making a calculation under the three voyage rule, the Court has not been pointed to

where any such calculation was made by Mr. Fiske, either in his deposition or in his

written report.  *See* Aff. of Fiske, at p. 3, attached as Ex. "3" to Pls.' Resp. (stating

that he has "given testimony from personal knowledge concerning the charter hire

rate actually earned by the vessel for the three voyages including the ADRIATIC II, which was interrupted by the incident involved in this case, the voyage prior the [sic] ADRIATIC II, and the subsequent voyage," but again, not actually calculating the loss of use damages using the three voyage rule).

The Fifth Circuit has allowed some exceptions to the use of the three voyage rule and has accepted an alternate methodology, such as when a vessel missed more than one voyage. *See Marine Transport Lines*, 37 F.3d at 1141 (*citing Todd Shipyards v. Turbine Serv., Inc.*, 674 F.2d 401 (5th Cir. 1982)). In *Todd Shipyards*, the damaged vessel was detained 215 days, during which time the court determined that the vessel could have made several voyages. *See Todd Shipyards,* 674 F.2d at 414. To determine the loss of use damages, the district court calculated a daily loss of profit and then multiplied this cost by the number of days the vessel was detained. However, the Fifth Circuit determined that it was clear error for the district court not to go further and to multiply the 215 days of lost profit by the percentage of likely productive time, or a utilization rate, because the vessel in that case historically had been operational 77.2% of the time. *See id.*

In this case, the Court is of the opinion that Plaintiffs have not met their burden of demonstrating that Mr. Fiske's reasoning or methodology is reliable. Mr. Fiske did not employ the three voyage rule or some similar, widely accepted methodology in calculating Plaintiffs' loss of use damages, nor did he consider any probable utilization rate or otherwise take into account the time when the vessel would not have been chartered or earning any revenue during the 151 day period he

calculates.  Therefore, the Court finds that his proffered expert testimony is not reliable.  *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007) (stating that "the expert's testimony must be reliable at each and every step or else it is inadmissible.  'The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia.'") (*quoting Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999)).

The Court is of the opinion that Mr. Fiske may testify as a fact witness on the issue of damages, based upon his personal knowledge or as a corporate representative or employee of Plantiff(s).  However, for the above-stated reasons, NGSS's Motion *in Limine* to exclude Mr. Fiske's proffered testimony as an expert must be granted.

## II.  CONCLUSION

The Court has considered the arguments advanced in support of the Motion *in Limine* to exclude the written report and proffered expert testimony of Mr. Fiske and finds that Plaintiffs have not met their burden of demonstrating that Mr. Fiske's reasoning or methodology is reliable.  Therefore, for the reasons detailed above, NGSS' Motion *in Limine* to exclude the written report and expert testimony of Mr. Fiske must be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited herein, the Motion *in Limine* of NGSS to Strike the Report and Opinions of Erik J. Fiske filed January 11, 2008 [308-1], should be and is hereby **GRANTED**.

Mr. Fiske may testify as a fact witness in this case, consistent with the provisions stated herein.

**SO ORDERED AND ADJUDGED**, this the 6th day of February, 2008.

_s/ Halil Suleyman Ozerden_

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE